FILED & JUDGMENT ENTERED
Steven T. Salata

December  2  2020

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| VR KING CONSTRUCTION, LLC, | ) | Chapter 7 |
| | ) | Case No. 18-31635 |
| Debtor. | ) | |
| | ) | |
| ——————————————— | ) | |
| | ) | |
| Y2 YOGA COTSWOLD, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. 19-03047 |
| | ) | |
| V. R. KING CONSTRUCTION, LLC; | ) | |
| VINROY REID; AND A. BURTON | ) | |
| SHUFORD, AS CHAPTER 7 TRUSTEE | ) | |
| FOR V. R. KING CONSTRUCTION, LLC | ) | |
| AND VINROY REID, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTIONS TO DISMISS,
MOTIONS FOR JUDGMENT ON THE PLEADINGS AND ALTERNATE MOTIONS FOR
SUMMARY JUDGMENT; DEFERRING RULING ON CERTAIN ISSUES PERTAINING TO 11
U.S.C. § 506(B); AND SETTING DEADLINES FOR FILING OF PROOFS OF CLAIM AND
ANY OBJECTIONS THERETO**

This matter came before the court on May 6, 2020 and June 19, 2020 on the Motion for

Judgment on the Pleadings, Alternate Motion for Summary Judgment filed by the Plaintiff, Y2 Yoga

Cotswold, LLC, on April 14, 2020; the Motion to Dismiss Complaint filed by Defendant A. Burton Shuford, Chapter 7 Trustee for V.R. King Construction, LLC and Vinroy Reid ("Trustee") on October 24, 2019; the Second Motion to Dismiss Complaint filed by the Trustee on April 16, 2020; the Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment filed by Defendant V.R. King Construction, LLC on May 18, 2020; and various responses and briefs filed by the parties.

## I.     Procedural History

1.      Vinroy Reid (the "Individual Debtor") filed a voluntary petition for relief commencing case no. 18-31436 under Chapter 13 of the United States Bankruptcy Code on September 21, 2018.[1]

2.      V. R. King Construction, LLC ("VR King"), VR Investments, LLC ("VR Investments") and Baranko Enterprises, Inc. ("Baranko") (collectively the "Corporate Debtors") are owned by the Individual Debtor. The Corporate Debtors each filed a separate Chapter 11 petition with this court on October 31, 2018. On December 13, 2018, the court entered orders substantively consolidating the cases of the Corporate Debtors with the VR King case, case no. 18-31635, as the remaining case. The Individual Debtor and the Corporate Debtors are collectively referred to herein as the "Debtors."

3.      The Trustee is the Chapter 7 Trustee for the Debtors.

4.      This adversary proceeding was commenced with the filing of a complaint on August 23, 2019 (the "Complaint") under Federal Rule of Bankruptcy Procedure 7001(2). This court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157, and the April 14, 2014 Amended Standing Order of Reference entered by the United States District Court for the Western District of North Carolina.

5.      Venue is proper in this district by virtue of 28 U.S.C. § 1409(a), as this proceeding arises in and relates to a case under the Bankruptcy Code pending in this district.

---

[1] The court converted case number 18-31436 to Chapter 7 on August 19, 2019.

6.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (K), and (O).

7.      An adversary proceeding was simultaneously filed in the Individual Debtor's Chapter 7 proceeding and is pending before this court as adversary proceeding no. 19-03049. The parties, the facts pled, the relief sought in each complaint, and the defenses thereto in each of the two adversary proceedings are identical.

Having considered all of the evidence presented, the arguments of counsel, the pleadings, the verifications of the Complaint, and the briefs of the parties, the court makes the following:

## II.     Findings of Fact

### A.     The Construction Agreement and the State Court Litigation

8.      On August 8, 2013, the Plaintiff and VR King entered into the Y2 Yoga Expansion Construction Agreement (the "Construction Agreement"). A copy of the Construction Agreement is attached to the Complaint as Exhibit A.

9.      Paragraph 3(b) of the Construction Agreement provides:

> <u>Indemnities.</u> The parties hereto agree to indemnify and hold harmless the non-breaching party against any claims, damages or penalties (including court costs and outside legal fees reasonably incurred) arising out of the breaching party's breach or alleged breach of any agreement, representation and warranty in this agreement. Notwithstanding anything to the contrary contained herein, the foregoing indemnity shall apply to those third party claims arising from General Contractor's oversight or negligence pertaining to operational, legal, and/or financial matters.

10.     To assist it in connection with the Debtors' failure to comply with the Construction Agreement, the Plaintiff retained the law firm of Horack, Talley, Pharr & Lowndes, P.A. ("Horack Talley") in 2014, on an hourly basis. In 2016, after settlement negotiations failed, the Plaintiff filed a complaint (the "State Court Complaint") against the Individual Debtor, VR King, VR Investments, and Spend Management Solutions, LLC with the Mecklenburg County Superior Court. This lawsuit is hereinafter referred to as the "State Court Litigation."

3

11.     The parties have stipulated that the court may take judicial notice of the record in the State Court Litigation.

12.     After having paid Horack Talley $52,683.73 for legal fees and costs, the Plaintiff did not have the financial ability to continue paying Horack Talley, or any other law firm, on an hourly basis. A summary of charges paid by the Plaintiff to Horack Talley for issues related to the Debtors' breach of the Construction Agreement is attached to the Complaint as Exhibit B.

13.     After several months of unsuccessfully searching for an attorney to handle the State Court Litigation on a contingency basis, the Plaintiff was ultimately able to retain David Guidry ("Guidry") as counsel in April of 2017. The Plaintiff and Guidry entered into an Engagement and Representation Agreement on May 8, 2017 (the "Fee Agreement").

14.     The Fee Agreement between Guidry and the Plaintiff included a flat fee of $19,000 plus a contingency fee that would not be incurred by the Plaintiff unless and until the Plaintiff recovered any funds from the Debtors. Guidry's contingency fee is set as a percentage of any recovery obtained and ranges from 35–45% depending on the phase of the case when the recovery amount is obtained. Based on any recovery after trial, the Plaintiff would owe Guidry a contingency fee of 45% of any amount ultimately recovered from the Debtors. A copy of the Fee Agreement is attached to the Complaint as Exhibit C.

**B.     The Plaintiff's compliance with North Carolina attachment statutes**

15.     On June 19, 2017, pursuant to North Carolina General Statute ("N.C.G.S.") § 1-440.12, the Clerk of Court of Mecklenburg County entered an Order of Attachment (the "First Attachment Order"). A copy of the First Attachment Order is attached to the Complaint as Exhibit D. The First Attachment Order commands the Sheriff of Mecklenburg County to "attach and keep safely as much of the property of the defendant within your county which is subject to attachment, as

is sufficient to satisfy the amount sought in the Affidavit in Attachment Proceeding, the costs of the action and expenses."

16.     On June 28, 2017, pursuant to the First Attachment Order, and in accordance with N.C.G.S. §§ 1-440.15 and 1-440.17, the Sheriff levied on ten parcels of real property located in Mecklenburg County (collectively the "First Attached Properties" and individually listed on Exhibit D to the Complaint). With the exception of the Misenheimer Road property, which is owned by the Individual Debtor, all of the First Attached Properties are owned by VR King and VR Investments.

17.     The Sheriff returned the levy to the Clerk and, in accordance with N.C.G.S. §§ 1-440.17(b) and 1-440.33, the Clerk docketed the Sheriff's return in the Civil Case Processing System ("VCAP") on June 29, 2017 (Exhibit E to the Complaint, showing "ABS CLK DT: 062917"). VCAP is the electronic filing system used by the Clerk, and it is the appropriate means for the Clerk to docket and index the documents relevant to the North Carolina attachment statutes.

18.     N.C.G.S. § 1-440.33(b) provides that an attachment lien on real property attaches upon docketing and indexing of the levy by the Clerk:

> (b) When the clerk receives from the sheriff a certificate of levy on real property as provided by G.S. 1-440.17, the clerk shall promptly note the levy on his judgment docket and index the same. When the levy is thus docketed and indexed,
> (1) The lien attaches and relates back to the time of the filing of the notice of lis pendens if the plaintiff has prior to the levy caused notice of the issuance of the order of attachment to be properly entered on the lis pendens docket of the county in which the land lies, as provided by subsection (a) of this section.
> (2) The lien attaches only from the time of the docketing of the certificate of levy if no entry of the issuance of the order of attachment has been made prior to the levy on the lis pendens docket of the county in which the land lies.

19.     The Plaintiff thereafter amended the State Court Complaint to, among other things, add Baranko as a defendant.

20.     On May 15, 2018, the Clerk entered a second Order of Attachment (the "Second Attachment Order") (attached to the Complaint as Exhibit G).

21.     On May 15, 2018, pursuant to the Second Attachment Order, the Sheriff levied on ten additional parcels of real property located in Mecklenburg County (collectively the "Second Attached Properties" and separately listed on Exhibit G to the Complaint).

22.     The Second Attached Properties were owned by Baranko at the time of the levy. The Debtors and the Trustee stipulated at the hearing that the First Attached Properties and the Second Attached Properties are property of the Debtors' bankruptcy estates.

23.     The Sheriff returned the levy to the Clerk and, as shown by VCAP, the Clerk docketed the Sheriff's return on May 15, 2018 (see Exhibit H attached to the Complaint, showing "ABS CLK DT: 051518").

### C.     The Debtors' efforts to dissolve the attachment orders

24.     On August 15, 2017, pursuant to N.C.G.S. § 1-440.36, the Debtors filed a Motion for Dissolution of Orders of Attachment (the "First Dissolution Motion") (Exhibit I attached to the Complaint). On or about August 24, 2017, after a hearing and while the state court's ruling was pending, the Debtors voluntarily withdrew the First Dissolution Motion, without prejudice.

25.     On October 23, 2018, after the state court trial commenced, the Debtors filed a Motion for Dissolution and Written Motion for Jury Trial (the "Second Dissolution Motion") (Exhibit J attached to the Complaint).

### D.     The bankruptcy filings

26.     The trial in the State Court Litigation began on September 18, 2018. The Individual Debtor filed his Chapter 13 bankruptcy petition on September 21, 2018 as the state court selected a jury.

6

27.    The Plaintiff filed an emergency motion for relief from stay in the Individual Debtor's case on September 27, 2018 seeking an order allowing the state court to continue with the trial and the liquidation of the Plaintiff's claims. On October 2, 2018, this court orally granted the Plaintiff's motion for relief, and the court entered an Order Conditionally Granting Relief from Stay (the "Relief Order") in the Individual Debtor's case on October 31, 2018.

28.    The Relief Order provides in part that "[n]othing herein shall prevent the Debtor and/or the defendant entities related to him from challenging any lien, inchoate or otherwise, asserted by the [Plaintiff]."

29.    On October 31, 2018, as the state court trial continued, the Corporate Debtors each filed separate Chapter 11 petitions with this court.

30.    On November 1, 2018, the Plaintiff and the Corporate Debtors filed a Stipulation Conditionally Granting Relief from Stay (the "Relief Stipulation") in each of the Corporate Debtors' cases, allowing the state court to liquidate the Plaintiff's claims against the Corporate Debtors and enter judgment.

**E.    Jury verdict and entry of judgment in favor of the Plaintiff**

31.    On November 2, 2018, the state court jury returned a verdict in favor of the Plaintiff on account of the Debtors' breach of the Construction Agreement. The state court jury also found that the Plaintiff had been damaged by the Debtors' breach of the Construction Agreement.

32.    On November 28, 2018, the Plaintiff filed a Motion for Costs with the state court.[2] The Motion for Costs asks the state court for the entry of an order taxing the costs of the State Court Litigation to the Debtors pursuant to N.C.G.S. §§ 6-1, 6-20, 7A-305, and 7A-314. The Motion for

---

[2] The Plaintiff attached the Motion for Costs that it filed in the State Court Litigation to its May 4, 2020 Response of Plaintiff Y2 Yoga Cotswold, LLC to Brief of Defendant A. Burton Shuford, Trustee for V.R. King Construction, LLC, in Support of Motons [sic] to Dismiss, and the court admitted the Motion for Costs into evidence at the May 6 hearing in this adversary proceeding.

7

Costs itemizes certain costs, including those for filing fees, certified mail service, process fees, sheriff's fees, mediation, depositions, trial exhibits, and expert witnesses. Notably, the Plaintiff did not request its attorney's fees in the Motion for Costs.

33.     On February 8, 2019, the state court entered a) a Final Judgment (the "Judgment") (Exhibit K to the Complaint); b) an Order on Defendants' Motions for Directed Verdict (Exhibit L to the Complaint); and c) an Order on Post-Verdict Motions (Exhibit M to the Complaint).

34.     The Judgment awards the Plaintiff "damages in the amount of $396,649.57, with interest at the legal rate of 8% from and after the date of the breach, March 21, 2014."

35.     The Order on Post-Verdict Motions taxes some of the costs requested by the Plaintiff in its Motion for Costs in the amount of $23,131.98 against the Debtors jointly and severally.

36.     The state court's Order on Post-Verdict Motions awards the Plaintiff certain costs pursuant to four statutory provisions: N.C.G.S. § 6-1 ("Items allowed as costs"); § 6-20 ("Costs allowed or not, in discretion of court"); § 7A-305 ("Costs in civil actions"); and § 7A-314 ("Uniform fees for witnesses; experts; limit on number").

37.     The Judgment, Order on Defendants' Motion for Directed Verdict, and Order on Post-Verdict Motions contain no findings with respect to the Plaintiff's indemnification claim for legal fees. The state court record reflects that the court did not consider the Plaintiff's indemnification claim for legal fees and that the Plaintiff's indemnification claim against the Debtors was not litigated in the State Court Litigation.

38.     Notwithstanding the Debtors' demand for a jury trial on their Second Dissolution Motion, the Judgment shows that the Debtors did not submit any issues to the state court jury related to the Second Dissolution Motion.

39.     The Order on Post-Verdict Motions states in part that:

> Nothing in this Order, however, is intended to or will be
> construed to affirm, confirm, dissolve, dismiss, or set aside the Orders

8

of Attachment entered in connection with this action. Further, nothing in this Order is intended to restrict, bar, or limit the United States Bankruptcy Court for the Western District of North Carolina from affirming, confirming, dissolving, modifying, dismissing, or setting aside the Orders of Attachment in this matter.

40.     It was not necessary for the state court, in the context of post-verdict motions, to "affirm" or "confirm" the attachment orders. The failure of the state court to do so did not affect the validity of those orders. The state court also declined to "dissolve, dismiss, or set aside" the two attachment orders. The Order on Post-Verdict Motions left the First Attachment Order and the Second Attachment Order, and the liens arising therefrom, in place.

41.     No appeals have been filed as to any of the state court rulings, including the Judgment, and the time within which to appeal has expired. The state court rulings and the Judgment are final.

42.     The Plaintiff's first claim for relief in this adversary proceeding requests a declaratory judgment concerning the validity, perfection, and enforceability of the Plaintiff's attachment liens on the First Attached Properties and the Second Attached Properties. The Debtors contest the first claim for relief, but the Trustee does not. The Debtors contend that the Plaintiff's attachment liens are either void or, alternatively, unperfected and therefore avoidable by the Trustee.

43.     The Plaintiff's second claim for relief requests a declaratory judgment that the Plaintiff's attachment liens have priority over the Trustee's rights in the First Attached Properties and the Second Attached Properties and that the Plaintiff's attachment liens are not avoidable by the Trustee. The Debtors contest the second claim for relief, but the Trustee does not. The Debtors contend that the Plaintiff's attachment liens are unperfected and therefore avoidable by the Trustee.

44.     The Plaintiff's third claim for relief requests the allowance of the Plaintiff's indemnity claims pursuant to the indemnification provisions of the Construction Agreement and 11 U.S.C. § 506. The Plaintiff contends that i) the Construction Agreement is an "agreement" as that term is used in § 506(b); ii) the Construction Agreement requires the Debtors to indemnify the Plaintiff for its legal

9

fees and costs related to the Debtors' breach of the agreement; iii) it has a secured claim that is secured by real property the value of which, after any recovery under § 506(c), exceeds the amount of the Plaintiff's allowed secured claim; iv) it is entitled to the legal rate of interest on the Judgment; and v) this court should allow the Plaintiff's reasonable legal fees and costs related to the Debtors' breach of the Construction Agreement.

45.     The Debtors and the Trustee contest the third claim for relief for somewhat different reasons. Both the Trustee and the Debtors contend that the doctrines of res judicata and collateral estoppel bar the Plaintiff's claims for legal fees. The Trustee also argues that the Rooker-Feldman doctrine bars the Plaintiff's claims for legal fees and that the Plaintiff, as the holder of a nonconsensual lien, is not entitled to attorney's fees.

46.     The Plaintiff alleges that it has incurred, and continues to incur, significant legal costs and expenses in connection with the filing and prosecution of the State Court Litigation and the preservation of its secured claims in the Debtors' multiple bankruptcy proceedings.

47.     The Plaintiff alleges that its claim consists of i) the liquidated damages of $396,649.57 provided for in the Judgment; ii) accrued interest at the legal rate ($196,216.56 through the date of the May 6 hearing); iii) the legal fees paid to Horack Talley and Guidry during the State Court Litigation; iv) the 45% contingency fee to be paid to Guidry when and if there is any collection from the Debtors on the Judgment; and v) the reasonable legal fees and costs paid to and owed to bankruptcy counsel for representation in multiple bankruptcy proceedings. The Plaintiff further alleges that the claim amount, as of the date of the May 6 hearing, exceeds $965,000.

48.     At the May 6 hearing, the Plaintiff's attorney noted that: a) according to the Debtors' schedules, the value of the equity in the Debtors' real property was approximately $883,000; b) the Individual Debtor testified at a prior hearing that the schedules undervalued the real property; and c)

the Trustee recently sold three parcels of real property for an average of 265% more than the scheduled values.

Having made the foregoing findings of fact, the court makes the following:

### III.    CONCLUSIONS OF LAW

#### A.    Legal standard

49.    The Plaintiff sought, and the court allowed, the admission of the Motion for Costs filed in state court, which was not a part of the original pleadings. This converted the Plaintiff's Motion for Judgment on the Pleadings, Alternate Motion for Summary Judgment to a motion for summary judgment or partial summary judgment.[3] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).[4]

50.    "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. "In other words, to grant summary judgment the court must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (citing

---

[3] The key distinction between a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 is that the court may not consider facts outside the pleadings under Rule 12(c). *See* FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (explaining that if a district court considering a Rule 12(b)(6) motion goes beyond the complaint and documents attached or incorporated into the complaint, the court must convert the motion into one for summary judgment).

[4] Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56 applicable to adversary proceedings in bankruptcy cases.

11

*Anderson*, 477 U.S. at 248). An issue of fact concerns material facts only if establishment of the fact might affect the outcome of the lawsuit under governing substantive law. *Anderson*, 477 U.S. at 248. All facts and reasonable inferences therefrom are viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

51.    Pursuant to Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56(g), "[i]f the court does not grant all the relief requested by the motion [for summary judgment], it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case."

**B.    Conclusions with respect to the Plaintiff's first claim for relief (validity and perfection of the Plaintiff's attachment liens)**

52.    State law generally governs the determination of property interests in bankruptcy cases. *Butner v. United States*, 440 U.S. 48, 55 (1979); *Universal Coops., Inc. v. FCX, Inc. (In re FCX, Inc.)*, 853 F.2d 1149, 1153 (4th Cir. 1988). The subject real property is located in North Carolina, so North Carolina law is determinative of the Plaintiff's lien rights. In North Carolina, attachment liens are governed by N.C.G.S. §§ 1-440.1 through 1-440.46. Bankruptcy law governs the potential avoidability of the Plaintiff's lien rights.

53.    The Debtors argue that the Plaintiff's attachment liens are either void or, alternatively, unperfected and therefore avoidable by the Trustee. The Debtors' argument is made with respect to both the Plaintiff's first claim for relief (validity and perfection of attachment liens) and the Plaintiff's second claim for relief (the attachment liens have priority over the Trustee's rights). These issues are therefore somewhat intertwined.

54.    The thrust of the Debtors' argument is that, because the Plaintiff did not file a lis pendens in connection with the State Court Litigation, the attachment liens are subject to avoidance

by the Trustee pursuant to his 11 U.S.C. § 544 "strong-arm powers." The Debtors do not otherwise

contest the Plaintiff's compliance with the North Carolina statutes pertaining to attachment liens.

55.     The cases cited by the Debtors in their briefs stand for the proposition that a lis

pendens provides constructive notice to subsequent bona fide purchasers of pending litigation. Only

one of the cases cited by the Debtors, however, pertains to attachment liens.[5] The cases cited by the

Debtors do not stand for the proposition that the filing of a lis pendens is the exclusive means by

which a bona fide purchaser (or someone in the position of a bona fide purchaser like the Trustee)

may be put on constructive notice of pending litigation.

56.     The one case cited by the Debtors that does pertain to orders of attachment, *Doub v.

Hartford Fire Ins. Co. (In re Medlin)*, 229 B.R. 353 (Bankr. E.D.N.C. 1998), is supportive of the Plaintiff's

case. The Debtors' briefs exclude the language in *Medlin* that is most relevant to this proceeding: "Lis

pendens is an optional procedure ancillary to the attachment, and the order of attachment is valid even

if not noted on the lis pendens docket." *Id.* at 358.  A lis pendens may serve to fix lien priority, but a

lis pendens is not required to perfect an attachment order.

57.     The most pertinent and instructive decision relevant to the issues before this court is

*Ivester v. Miller*, 398 B.R. 408 (M.D.N.C. 2008). In *Ivester*, the debtor and two creditors were involved

in state court litigation at the time the debtor filed a bankruptcy petition. *Id.* at 413–14. The creditors

had obtained an order of attachment, the sheriff had levied on real property of the debtor pre-petition,

and the creditors had been awarded partial summary judgment in an amount exceeding $900,000. *Id.*

Before the trial on the remaining claims, the debtor filed a Chapter 7 bankruptcy petition. *Id.* at 414.

---

[5] The cases cited by the Debtors that are not germane to the issue of whether an order of attachment
provides notice to a bona fide purchaser include: *Angell v. Faison (In re Faison)*, 518 B.R. 849 (Bankr.
E.D.N.C. 2014); *Sea Horse Realty & Constr., Inc. v. Citimortgage, Inc. (In re Sea Horse Realty & Constr., Inc.)*,
Ch. 11 Case No. 11-07223-8, Adv. No. 11-00377-8, 2012 WL 3249548 (Bankr. E.D.N.C. Aug. 7, 2012)
(order denying plaintiff's motion for partial summary judgment); *In re Suggs*, 355 B.R. 525 (Bankr.
M.D.N.C. 2006); *Lawing v. Jaynes*, 285 N.C. 418, 206 S.E.2d 162 (1974); and *Cutter v. Cutter Realty Co.*,
265 N.C. 664, 144 S.E.2d 882 (1965).

The Chapter 7 trustee removed the state court action to federal court and objected to the creditors' motion for relief from stay that sought an order allowing the state court to proceed to final judgment. *Id.* The bankruptcy court denied the motion for relief, stating that the creditors' "interests in the attached property were not perfected because no final judgment [had been] entered, thus subordinating their interests to the Trustee's strong arm powers." *Id.* (citing *In re Bradshaw*, No. 06-11111, 2007 WL 542161, at *4, *6 (Bankr. M.D.N.C. Feb. 16, 2007)). The creditors appealed the bankruptcy court decision. *Id.* The United States District Court held that under N.C.G.S. § 1-440.33(b), a creditor's attachment lien is perfected, "to the extent 'perfection' is meant to stake the plaintiff's place in line vis-á-vis subsequent creditors," "upon the docketing and indexing of the levy by the county clerk," subject to the eventual entry of a final judgment. *Id.* at 416–17, 419. The *Ivester* court further held that the creditors' interest in the property was superior to the trustee's as long as the state court lawsuit was viable, so the creditors' attachment lien rights were not subject to avoidance by the Chapter 7 trustee. *Id.* at 419–20.

58.    Importantly, in the *Ivester* case, the creditors had obtained an order of attachment (as did the Plaintiff herein), but the creditors did not file a separate lis pendens before the bankruptcy case commenced.[6] The rationale of *Ivester* would allow a creditor's post-petition judgment to relate back to a pre-petition attachment order,[7] and the attachment lien would not be avoidable by the trustee if the attachment order was docketed more than ninety days prior to the bankruptcy filing. The *Ivester*

---

[6] While *Ivester* refers to a lis pendens, *see* 398 B.R. at 419 ("Based on the North Carolina attachment lien statute and relevant case law, the court concludes that the Ivesters 'perfected' their attachment lien in the real property on October 21, 2005, the date of levy and recordation of their lis pendens, almost a year before their petition date."), based on the facts recounted in the order, the context, and the order as a whole, the court believes this reference is to the entry of the levies pursuant to the order of attachment on the lis pendens docket and not to a separate lis pendens, *see, e.g., id.* at 413 (describing the entry of a certificate of levy pursuant to the attachment order on the lis pendens docket on October 21, 2005).

[7] The issue before the court in *Ivester* was whether the creditors should be allowed relief from stay to proceed to judgment. 398 B.R. at 429–20.

14

decision also confirms that in North Carolina, a creditor who obtains an order of attachment, which is levied upon and docketed by the clerk, is not required to also file a lis pendens. The filing of a lis pendens is optional. The lis pendens is only relevant to determining when a lien is perfected. If a creditor obtains an order of attachment and files a lis pendens in the same litigation, the judgment relates back to the earliest document filed.

59.   A North Carolina Court of Appeals decision cited by the *Ivester* court, which also supports the Plaintiff's attachment lien rights, is *Edwards v. Brown's Cabinets*, 63 N.C. App. 524, 305 S.E.2d 765 (1983). The *Brown's Cabinets* court noted that:

> When an order of attachment is perfected by a levy, a lien of attachment is created thereby which establishes the lienor's claim as against all other creditors and subsequent lienors. The date to which the lien relates back and fixes the priority of the claim is established, with respect to real property, is the time at which the notice of the order of attachment is docketed in the record of *lis pendens* in the county where the property is located. G.S. 1-440.33(b)(1). A person claiming under a conveyance or encumbrance executed subsequent to the docketing of the notice of the order with respect to the property conveyed or encumbranced takes subject to the action whose pendency was so noted.

63 N.C. App. at 528, 305 S.E.2d at 768 (citing *Cutter v. Cutter Realty Co.*, 265 N.C. 664, 144 S.E.2d 882 (1965); JAMES A. WEBSTER, JR., REAL ESTATE LAW IN NORTH CAROLINA § 497 (1981)).

60.   *Brown's Cabinets* is consistent with *Voehringer v. Pollock*, 224 N.C. 409, 30 S.E.2d 374 (1944), in which the Supreme Court of North Carolina states that "[t]he jurisdiction of the Court derived from a levy under a warrant of attachment dates from the levy, but the lien becomes effective as to third parties, when certified to the Clerk of the Superior Court and indexed in the manner prescribed in the statute." 224 N.C. at 411, 30 S.E.2d at 376 (citations omitted). Based on the facts of this case and the relevant decisions, the court concludes that the levy and docketing of the orders of attachment by the Plaintiff herein perfected the Plaintiff's lien rights on the First Attached Properties

15

and the Second Attached Properties without the Plaintiff having taken the optional step of filing a lis pendens.

61.     The Debtors raised several arguments at the hearing that do not appear to have been pled or briefed. First, the Debtors argued that the attachment orders are void because the state court jury concluded that the Debtors had not fraudulently transferred several parcels of real property.  The Debtors provided no legal support for the argument. Though not articulated, the Debtors appear to be questioning whether the Plaintiff had grounds to seek the attachment orders under N.C.G.S. § 1-440.3. This is an improper collateral attack on the two attachment orders that is prohibited by the Rooker-Feldman doctrine. *See* Allison B. Jones, Note, *The Rooker-Feldman Doctrine: What Does It Mean to Be Inextricably Intertwined?*, 56 DUKE L.J. 643, 644 (2006) ("At its most basic, the Rooker-Feldman doctrine, named after the two cases from which it sprung, is the principle that lower federal courts do not have jurisdiction to review state court judgments."). Furthermore, the Judgment shows that the state court jury did not make any findings with respect to the two attachment orders. Rather, the jury found against the Plaintiff on a separate fraudulent transfer cause of action that had been pled by the Plaintiff in its State Court Complaint. The Debtors' argument is defective as the jury verdict is not related to, and has no impact on, the validity of the two attachment orders.

62.     Second, the Debtors implicitly argue that this court has the authority to dissolve the state court's attachment orders. The Debtors have provided no legal basis to support the ability of this court to grant such relief. Both the Relief Order and the Relief Stipulation provide in part that "[n]othing herein shall prevent the Debtor and/or the defendant entities related to him from challenging any lien, inchoate or otherwise, asserted by the [Plaintiff]." The Debtors attempted twice to dissolve the two attachment orders in state court. The court concludes that there is no legal basis by which the Debtors would be allowed a third opportunity.  N.C.G.S. § 1-440.36 is the only statutory basis by which the Debtors could have dissolved the First Attachment Order and the Second

16

Attachment Order. Because a judgment has already been entered in the State Court Litigation, that relief is no longer available to the Debtors. *See* N.C. GEN. STAT. § 1-440.36(a) ("At any time *before judgment* in the principal action, a defendant whose property has been attached may specially or generally appear and move, either before the clerk or the judge, to dissolve the order of attachment.") (emphasis added). The Order on Post-Verdict Motions entered by the state court states that the First Attachment Order and the Second Attachment Order were not "dissolved, dismissed, or set aside." Therefore, the First Attachment Order and the Second Attachment Order, as well as the Plaintiff's attachment liens, continue to be valid.

63.     Third, the Debtors argue that the Plaintiff's attachment liens are avoidable since the Judgment was not entered until after the Debtors had filed bankruptcy. The Debtors offered no legal support for this argument. The Plaintiff obtained relief from stay in four separate bankruptcy proceedings specifically so that the state court could liquidate the Plaintiff's claim and enter the Judgment. The Debtors' argument is contrary to *Ivester*, where a judgment entered after a bankruptcy filing would have related back to the date an order of attachment was levied and docketed by the clerk. "Under the North Carolina statutory scheme for attachment liens, as long as the underlying principal action remains viable the attachment lien survives in bankruptcy and must be valued, whether through litigation or through the proof of claim process." *Ivester*, 398 B.R. at 427 n.19. This argument by the Debtors also fails.

**C.     Conclusions with respect to the Plaintiff's second claim for relief (Plaintiff's attachment liens have priority over the Trustee's rights and are not avoidable by the Trustee)**

64.     The Debtors contend that the Plaintiff's attachment liens are unperfected and therefore avoidable by the Trustee. The Trustee, who has conceded this claim for relief, does not concur with the Debtors. The court has heretofore concluded that the Plaintiff's attachment liens are perfected and that the Plaintiff was not required to file a lis pendens in order to perfect its attachment

liens. *Ivester* is also contrary to the Debtors' argument, in that the *Ivester* court concluded that a creditor's pre-petition attachment lien was superior to the Chapter 7 trustee's hypothetical lien creditor status and that the creditor's post-petition judgment would relate back to the docketing and levy of the order of attachment.

65.     While federal law provides the trustee with "strong-arm" powers pursuant to 11 U.S.C. § 544, state law governs the trustee's use of those powers. *Crestar Bank v. Neal (In re Kitchin Equip. Co.)*, 960 F.2d 1242, 1245 (4th Cir. 1992) (citing *Havee v. Belk*, 775 F.2d 1209, 1218 (4th Cir. 1985)). Section 544(a)(1) provides that, as of the date of the bankruptcy petition filing, the trustee obtains the rights of a hypothetical judgment lien creditor. Through this statute, "the trustee becomes the 'ideal creditor, irreproachable and without notice, armed cap-a-pie with every right and power which is conferred by the law of the state upon its most favored creditor who has acquired a lien by legal or equitable proceedings.' " *Havee*, 775 F.2d at 1218 n.15 (quoting *In re Kravitz*, 278 F.2d 820, 822 (3d Cir. 1960)). Section 544(a)(3) places the trustee in the position of a bona fide purchaser, and, "[a]s such, the trustee may avoid a claim against the debtor's estate if a bona fide purchaser would have defeated the claim." *Butler v. Deutsche Bank Tr. Co. Ams. (In re Rose)*, Ch. 7 Case No. 08-00625-8, Adv. No. 08-00080-8, 2009 WL 2226658, at *2 (Bankr. E.D.N.C. July 20, 2009) (citing § 544(a)(3)).

66.     Pursuant to N.C.G.S. 1-440.33(b), the Plaintiff's liens on the First Attached Properties were perfected and effective as to third parties when the levy was docketed on June 29, 2017. The Plaintiff's attachment liens on the Second Attached Properties were perfected and became effective as to third parties when the levy was docketed on May 15, 2018. All of the Plaintiff's attachment liens were perfected prior to the commencement of the Debtors' bankruptcy cases. The Trustee is therefore not able to avoid the Plaintiff's attachment liens because North Carolina "law contemplates that a purchaser of land will examine each recorded deed or other instrument in his chain of title, and charges him with notice of every fact affecting his title which such an examination would disclose." *Hensley v.*

18

*Ramsey*, 283 N.C. 714, 730, 199 S.E.2d 1, 10 (1973) (quoting *Higdon v. Jaffa*, 231 N.C. 242, 248, 56

S.E.2d 661, 665 (1949)). This principle has been interpreted to extend to every "document" in the

chain of title. *See Butler*, 2009 WL 2226658, at *3. The court believes that the First Attachment Order

and the Second Attachment Order, levied upon and docketed by the Clerk, are the very sort of

documents in the chain of title of the Debtors' real property that would alert a bona fide purchaser to

the pending State Court Litigation affecting title to that property.

67.     The Debtors also argue in their briefs that the attachment liens are avoidable

preferences. This argument is, by definition, incorrect. The Plaintiff is not an "insider" pursuant to 11

U.S.C. § 101(31), so, to be a preferential transfer under 11 U.S.C. § 547, the Plaintiff's attachment liens

would need to have been perfected within the 90 days prior to the filing of the bankruptcy cases of

the Individual Debtor and/or the Corporate Debtors. The Plaintiff's attachment liens were perfected

outside of the 90-day "look-back period" in § 547. Therefore, the perfection of the Plaintiff's

attachment liens is not preferential.

68.     The court agrees with the Plaintiff's interpretation of the North Carolina statutes and

the interpretation of those statutes by the *Medlin*, *Brown's Cabinets*, and *Ivester* courts. The facts show

that the Plaintiff meets all of the criteria for having perfected, unavoidable attachment liens on the

Debtors' real property.

**D.    Conclusions with respect to the Plaintiff's third claim for relief (allowance of the Plaintiff's indemnity claims for legal fees pursuant to agreement with the Debtors and 11 U.S.C. § 506(b))**

69.     11 U.S.C. § 506(b) provides that:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

**1. There is an enforceable "agreement" between the Plaintiff and the Debtors, as that term is used in 11 U.S.C. § 506(b)**

70. In applying § 506(b) to the facts herein, the court must first determine whether there is an "agreement . . . under which such claim arose." If there is no "agreement," then there would be no need for the court to analyze any of the other statutory elements. In this case there is such an agreement: the Construction Agreement between the Plaintiff and the Debtors.

**2. The indemnification provision of the Construction Agreement is valid and enforceable**

71. The Debtors, but not the Trustee, have challenged the validity of the indemnification provisions in the Construction Agreement, arguing that the provision is invalid under N.C.G.S. § 22B-1.[8] The Debtors' first affirmative defense is that "North Carolina law states it is against public policy to have an indemnity clause in a construction or service contract." This is a misstatement of the law.

72. Contracts providing for indemnification are generally enforceable. The indemnity provisions to which N.C.G.S. § 22B-1 applies are those construction indemnity provisions which attempt to indemnify a party against its own negligence. "The statute specifically does not apply to a contract, promise, or agreement in which one agrees to indemnify another 'against liability for damages

---

[8] As of the date the parties executed the Construction Agreement, N.C.G.S. § 22B-1 (1993) provided:

> Any promise or agreement in, or in connection with, a contract or agreement relative to the design, planning, construction, alteration, repair or maintenance of a building, structure, highway, road, appurtenance or appliance . . . purporting to indemnify or hold harmless the promisee, the promisee's independent contractors, agents, employees, or indemnitees against liability for damages arising out of bodily injury to persons or damage to property proximately caused by or resulting from the negligence, in whole or in part, of the promisee, its independent contractors, agents, employees, or indemnitees, is against public policy and is void and unenforceable. Nothing contained in this section shall prevent or prohibit a contract, promise or agreement whereby a promisor shall indemnify or hold harmless any promisee or the promisee's independent contractors, agents, employees or indemnitees against liability for damages resulting from the sole negligence of the promisor, its agents or employees.

20

resulting from the sole negligence of the promisor, its agents or employees.' " *Int'l Paper Co. v. Corporex Constructors, Inc.*, 96 N.C. App. 312, 315, 385 S.E.2d 553, 555 (1989) (quoting § 22B-1) (emphasis removed). "Indemnity contracts generally are enforced according to their terms," *Hanover Ins. Co. v. Lanier*, No. 12-CV-50, 2013 WL 3455735, at *3 (E.D.N.C. July 9, 2013) (citations omitted), and "[t]his is particularly true where, as here, the parties presumably dealt at arms length and without the exercise of superior bargaining power," *Cooper v. H.B. Owsley & Son, Inc.*, 43 N.C. App. 261, 267, 258 S.E.2d 842, 846 (1979) (citation omitted).

73.    By the explicit terms of paragraph 3(b) of the Construction Agreement, the Plaintiff is not attempting to hold the Debtors responsible for its own negligence. The language in paragraph 3(b) clearly states that the Plaintiff would be entitled to be indemnified for claims arising from the *Debtors'* negligence. The indemnification provision in the Construction Agreement between the Plaintiff and the Debtors, by its plain terms, is the type of indemnity which is expressly allowed by N.C.G.S. § 22B-1.[9] The court, therefore, finds that the indemnification provision in the Construction Agreement is valid and enforceable under North Carolina law.

### 3.    The Judgment is not res judicata as to the Plaintiff's indemnification claims in this adversary proceeding

74.    The Debtors and the Trustee argue that the court should dismiss this claim for lack of subject matter jurisdiction because the Judgment was res judicata as to the Plaintiff's indemnification claims. The court disagrees.

75.    Res judicata (claim preclusion) and collateral estoppel (issue preclusion) are companion doctrines. "The basic difference between claim preclusion and issue preclusion is simply put: claim preclusion applies to whole claims, whether litigated or not, whereas issue preclusion applies to particular issues that have been contested and resolved." 18 JAMES W. MOORE ET AL., MOORE'S

---

[9] The indemnification clause in the Construction Agreement is also a reciprocal attorney's fees provision pursuant to N.C.G.S. § 6-21.6.

21

FEDERAL PRACTICE-CIVIL ¶ 131.13[1] (2020). Res judicata arises when a final judgment concerns the actual facts giving rise to the claim. Collateral estoppel arises when the claim at bar has not been litigated, but the exact issue that is now before the court has been raised and litigated in an earlier action.

76.     The full faith and credit statute compels a federal court to accord a state court judgment the same preclusive effect that it would be accorded by the rendering state court. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (quoting 28 U.S.C. § 1738). Since a North Carolina court applying North Carolina law entered the Judgment, North Carolina law will determine the preclusive effect of the Judgment. The essential elements of res judicata are: "(1) a final judgment on the merits in an earlier suit, (2) an identity of the causes of action in both the earlier and the later suit, and (3) an identity of the parties or their privies in the two suits." *Herring v. Winston-Salem/Forsyth Cnty. Bd. of Educ.*, 188 N.C. App. 441, 444, 656 S.E.2d 307, 310 (2008) (quoting *Moody v. Able Outdoor, Inc.*, 169 N.C. App. 80, 84, 609 S.E.2d 259, 262 (2005)). Under North Carolina law, "where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." *Edwards v. Edwards*, 118 N.C. App 464, 468, 456 S.E.2d 126, 128 (1995) (quoting *Thomas M. McInnis & Assocs., Inc. v. Hall*, 318 N.C. 421, 427, 349 S.E.2d 552, 556 (1986)).

77.     North Carolina has a policy of permissive joinder of claims.[10] It was this policy which led the *Edwards* court to reject "the proposition that joinder of an non-accrued indemnification claim was mandatory." *Id.* at 472, 456 S.E.2d at 131. The *Edwards* decision cites numerous court decisions

---

[10] Under North Carolina's joinder rules, "[a] party asserting a claim for relief . . . may join, either as independent or as alternate claims, as many claims, legal or equitable, as he has against an opposing party," N.C.R. CIV. P. 18(a), and "[w]henever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action," N.C.R. CIV. P. 18(b).

where North Carolina courts "have consistently rejected efforts to disallow [attorney's fee] awards not pursued in the earlier principal action." *Id.* at 473, 456 S.E.2d 131–32 (citations omitted). Similarly, in *Bridgestone/Firestone, Inc. v. Ogden Plant Maint. Co.*, the North Carolina Court of Appeals allowed a plaintiff to pursue indemnity claims after the settlement of an underlying wrongful death lawsuit. 144 N.C. App. 503, 505, 510, 548 S.E.2d 807, 809, 812 (2001).

78. The Debtors also argue that the Plaintiff's indemnification claims are barred by the doctrine of merger, a collateral aspect of res judicata that determines the scope of claims precluded from relitigation by an existing judgment. Under the doctrine of merger, a plaintiff may not try to recover more damages for a claim or cause of action after judgment on the merits. Merger prevents claim-splitting and requires all damages resulting from a single wrong or cause of action to be recovered in one suit. *See Bockweg v. Anderson*, 333 N.C. 486, 492, 428 S.E.2d 157, 161 (1993) (citing *Smith v. Pate*, 246 N.C. 63, 67, 97 S.E.2d 457, 460 (1957)). The doctrine requires that "all matters, either fact or law, that were or should have been adjudicated in the prior action are deemed concluded." *McInnis*, 318 N.C. at 428, 349 S.E.2d at 556 (citations omitted). Stated otherwise, "a party suing for the breach of an indivisible contract must sue for all of the benefits which have accrued at the time of suit or be precluded from maintaining a subsequent action for installments omitted." *Behr v. Behr*, 46 N.C. App. 694, 698, 266 S.E.2d 393, 396 (1980) (citations omitted).

79. The court concludes that, upon applying the facts of this case, the elements of res judicata are not met and res judicata does not bar the Plaintiff's indemnification claims in this proceeding. While there is an identity of parties between the State Court Litigation and this adversary proceeding, the other elements of res judicata are not met.

### a. There was no final judgment on the merits of the Plaintiff's indemnification claims in the State Court Litigation

80. Neither the jury nor the state court made any findings concerning the Plaintiff's indemnification claims. The state court orders do not reference the Plaintiff's claims for indemnity.

There was no final judgment concerning the Plaintiff's indemnification claims in the State Court Litigation.

### b. There is no identity of the causes of action between the State Court Litigation and this adversary proceeding

81.     The Plaintiff's third claim for relief in this adversary proceeding, which requests the allowance of its indemnification claims pursuant to 11 U.S.C. § 506(b), is not identical to any of the causes of action in the State Court Litigation. The *Edwards* decision makes clear that there is "a substantial distinction" between an underlying action and a subsequent request for legal fees arising from the underlying action. 118 N.C. App at 473, 456 S.E.2d at 131.

### c. The doctrine of merger does not bar the Plaintiff's indemnification claims

82.     The Plaintiff's claims for indemnification had not accrued at the time the Plaintiff filed its complaint in the State Court Litigation, in that neither the Debtors' breach of the Construction Agreement nor the Debtors' liability under the indemnification clause had been determined. The *Edwards* court ruled that a plaintiff was not barred by the doctrine of merger from asserting indemnification claims for legal fees after judgment in a breach of contract action, because the "claim for indemnification had not accrued at the time of filing his complaint for specific performance in that neither had breach of the Agreement been determined nor had he incurred counsel fees." *Id.* at 471, 456 S.E.2d at 130.

### 4. The Plaintiff is not collaterally estopped from pursuing its indemnification claims in this adversary proceeding

83.     The Debtors and the Trustee argue that the court should dismiss the Plaintiff's third claim for relief, or alternatively decide that it lacks subject matter jurisdiction, because the Plaintiff is collaterally estopped from asserting its indemnification claims after entry of the Judgment by the state court. As with the doctrine of res judicata, North Carolina law will determine the collateral estoppel effect of the Judgment. Under North Carolina law, "where the second action between the same parties

24

is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." *Id.* at 468, 456 S.E.2d at 128 (quoting *McInnis*, 318 N.C. at 427, 349 S.E.2d at 556).

84.    In *U.S. Fire Ins. Co. v. Se. Airmotive Corp.*, the North Carolina Court of Appeals noted that:

> Collateral estoppel is applicable only (1) where the issues to be precluded are the same as those involved in the prior action, (2) where those actions were actually raised and litigated, (3) where the issues must have been relevant to the disposition of the prior action, and (4) where the determination of those issues must have been necessary to the resulting judgment.

102 N.C. App. 470, 473, 402 S.E.2d 466, 468 (1991) (citing *King v. Grindstaff*, 284 N.C. 348, 358, 200 S.E.2d 799, 806 (1973)). The North Carolina Supreme Court has stated that "[a] very close examination of matters actually litigated must be made in order to determine if the underlying issues are in fact identical. If they are not identical, then the doctrine of collateral estoppel does not apply." *Beckwith v. Llewellyn*, 326 N.C. 569, 574, 391 S.E.2d 189, 191 (1990).

85.    A close examination of the facts in this case shows that the factors necessary for the application of collateral estoppel in the *U.S. Fire* case are not present.

### a.  The Plaintiff's indemnification rights against the Debtors are not the same as the issues involved in the State Court Litigation

86.    The *Edwards* decision held that an indemnification claim is a "separate and distinct issue" from the underlying breach of contract action and that a plaintiff's assertion of its indemnification claim for attorney's fees is not barred by the principle of collateral estoppel. 118 N.C. App. at 469, 456 S.E.2d at 129.

### b. The Plaintiff's indemnification claims were not actually litigated in the State Court Litigation

87.    The Plaintiff did not request its attorney's fees pursuant to the indemnification provision in the Construction Agreement at the conclusion of the State Court Litigation.[11] Nothing in the record, including the Judgment and the other state court orders, indicates that the Plaintiff's indemnification claims for attorney's fees were actually litigated in the State Court Litigation. No findings were made by the state court with respect to the Plaintiff's attorney's fees.

### c. The Plaintiff's indemnification claims were not relevant to the disposition of the State Court Litigation

88.    The Plaintiff's indemnification claims against the Debtors did not accrue until the state court determined the Debtors' liability for breach of contract and damages on account of that breach upon entry of the Judgment on February 8, 2019. The indemnification claims sought by the Plaintiff in this proceeding are "separate and distinct" from the claims that the Plaintiff pursued in the State Court Litigation and, as such, the Plaintiff's indemnification claims were not relevant to the disposition of the State Court Litigation.

### d. The determination of the Plaintiff's indemnification claims was not necessary to the Judgment in the State Court Litigation

89.    The Plaintiff was not required to pursue its unaccrued indemnification claims in the State Court Litigation because joinder of the indemnification claims was not mandatory. A close examination of the matters actually litigated shows that the Plaintiff's indemnification claims are totally dissimilar to any of the issues in the State Court Litigation. In the State Court Litigation, the state court only determined the causes of action as they existed at the time of the filing of the State Court

---

[11] The State Court Complaint includes standard language requesting the payment of attorney's fees, but, given the bankruptcy cases filed by the Debtors prior to the conclusion of the state court trial, the court understands why the Plaintiff decided not to request fees from the state court and instead to pursue the collection of all of its attorney's fees, for the state court trial and the bankruptcy cases, in this court.

Complaint in 2016, and these causes of action did not include the Plaintiff's right to be indemnified for its legal fees by the Debtors. As such, the determination of the Plaintiff's indemnification claims was not necessary to the state court Judgment.

90.    The court therefore concludes that the doctrine of collateral estoppel does not apply to or bar the Plaintiff's indemnification claims against the Debtors in this adversary proceeding.

**5.    The Rooker-Feldman doctrine does not bar the Plaintiff from pursuing its indemnification claims in this adversary proceeding**

91.    The Trustee argues that the Plaintiff's indemnification claims are barred by the Rooker-Feldman doctrine. The Trustee claims the Plaintiff is attempting to modify or seek this court's review of the Judgment of the state court. The court disagrees. As stated above, the Plaintiff is seeking an indemnification claim which is a "separate and distinct issue" from the underlying breach of contract action in the State Court Litigation. The Supreme Court has held that the Rooker-Feldman doctrine is a narrow jurisdictional bar to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Supreme Court in *Exxon* noted that "[i]f a federal plaintiff 'present[s] some independent claim, . . . then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.' " *Id.* at 293 (quoting *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993) (second alteration in original)).

92.    In the present case, the Plaintiff is not attempting to appeal or overturn the Judgment entered by the state court. The Plaintiff was the "winner" in the State Court Litigation. The court concludes that the Plantiff's assertion of indemnification claims in this adversary proceeding is not barred by the Rooker-Feldman doctrine.

### 6.    Other issues relevant to the Plaintiff's 11 U.S.C. § 506(b) claims

#### a.    Valuation of collateral

93.    The court's determination of the Plaintiff's 11 U.S.C. § 506(b) claims depends in part on the extent to which the value of the Plaintiff's collateral exceeds the amount of the Plaintiff's allowed secured claim. The Plaintiff argues that: a) as of the May 6, 2020 hearing date, the Judgment amount plus accrued interest at the legal rate totaled $615,998.11; b) with legal fees and costs, its claim could exceed $965,000; c) the value of the equity in the real property that is subject to its attachment liens is approximately $883,000 using the scheduled values and scheduled secured claims; d) the Individual Debtor previously testified that the scheduled values were not accurate; and e) given that the average sales price of the Debtors' real property sold by the Trustee exceeded the scheduled values by approximately 265%, the actual equity in the Plaintiff's collateral could be in excess of $2,000,000.

94.    The Plaintiff concedes that its secured status for § 506(b) purposes cannot be determined until the Trustee actually sells the Debtors' real property. The Fourth Circuit held in *Ford Motor Credit Co. v. Dobbins* that when there is an issue about whether a creditor is oversecured or undersecured, the collateral is actually sold during the pendency of the case, and the terms of the sale are fair and the result of an arm's-length transaction, the court "should use the sale price, not some earlier hypothetical valuation, to determine whether a creditor is oversecured and thus entitled to postpetition interest under § 506(b)." 35 F.3d 860, 870 (1994) (citations omitted).

#### b.    The Plaintiff's entitlement to reasonable attorney's fees as the holder of a nonconsensual lien

95.    The Trustee's Reply Brief argues that the Plaintiff is not entitled to its legal fees under § 506(b) pursuant to *Rushton v. State Bank of S. Utah (In re Gledhill)*, 164 F.3d 1338, 1342 (10th Cir. 1999) (holding that a creditor is not entitled to legal fees under § 506(b) if the creditor's lien arose not by agreement but by operation of law and is a nonconsensual lien). In response, the Plaintiff cited *McCormick v. Starion Fin. (In re McCormick)*, 894 F.3d 953, 957–58 (8th Cir. 2018) (holding that a creditor

28

is entitled to legal fees under § 506(b) where there are agreements to pay attorney's fees even if the creditor's liens are nonconsensual).

### c.    Relevance of 11 U.S.C. § 506(b) in a solvent Chapter 7 case

96.    The Plaintiff suggested to the court that, if the Debtors' bankruptcy estates are solvent, the Plaintiff would be entitled to its reasonable attorney's fees and the court would not necessarily need to decide the § 506(b) issues. *See SummitBridge Nat'l Invs. III, LLC v. Faison*, 915 F.3d 288, 292–97 (4th Cir. 2019) (concluding that §§ 502(b) & 506(b) do not disallow unsecured claims for post-petition attorney's fees).

97.    At the May 6, 2020 hearing, the court determined that it should defer ruling on these additional issues, and it asked the parties to file supplemental briefs addressing the issues. Having considered the record herein, including the schedules filed by the Debtors and the supplemental briefs of the parties, the court concludes pursuant to *SummitBridge* that even if the Plaintiff is found not to have allowable § 506(b) claims, the Plaintiff would have an allowable general unsecured claim for its reasonable attorney's fees. *Id.* Since it appears that the Debtors' bankruptcy estates may be solvent and capable of paying all secured and unsecured claims in full, any opinion by the court on the remaining § 506(b) issues at this point would be advisory and unnecessary.

### 7.    Conclusions with respect to the Debtors' affirmative defenses

98.    In their Answer to the Plaintiff's Complaint, the Corporate Debtors list twelve affirmative defenses. Each of the affirmative defenses has either already been addressed in this order or was not pursued by the Debtors in their briefs or at the hearings.  Accordingly, each of the affirmative defenses has either been rejected by the court or waived by the Debtors.

### 8.    Conclusions with respect to the Corporate Debtors' Rule 12 Motion

99.    On April 16, 2020, the Corporate Debtors filed a Motion for Extension of Time to File Dispositive Motions. On May 1, 2020, the court entered its Order Granting Motion for Extension

of Time to File Dispositive Motions and extended the time for the Corporate Debtors to file dispositive motions until May 17, 2020. The May 1, 2020 Order did not grant the Corporate Debtors additional time to respond to the Plaintiff's summary judgment motion, which was heard by the court on May 6, 2020. At the May 6, 2020 hearing, the court orally granted summary judgment in favor of the Plaintiff as to its first and second claims for relief; the defenses of lack of jurisdiction, res judicata, collateral estoppel, and the Rooker-Feldman doctrine; and the affirmative defenses asserted in the Corporate Debtors' Answer to the Complaint.

100.    The Corporate Debtors filed their Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment ("Rule 12 Motion") on May 18, 2020. The Rule 12 Motion makes arguments that are contrary to and inconsistent with the rulings that were made by the court at the May 6, 2020 hearing. Each of the arguments in the Rule 12 Motion is therefore barred by the law of the case doctrine. This doctrine dictates that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). This rule is intended to promote the "finality and efficiency of the judicial process by 'protecting against the agitation of settled issues,' " *id.* at 816 (quoting 1B JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 0.404[1] (1984)), but is nevertheless discretionary and "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power," *id.* at 817 (quoting *Messinger v. Anderson*, 225 U.S. 436, 444 (1912)).

101.    The Fourth Circuit has held that courts should follow the law of the case doctrine "unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999) (quoting *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988)). There has been no

showing by the Debtors that any of these exceptions to the law of the case doctrine apply in this proceeding generally or to the June 19, 2020 hearing specifically.

102.    Even if the law of the case doctrine did not bar the defenses in the Rule 12 Motion, the court concludes that the Debtors have not met their burden with respect to those defenses and the defenses would fail on the merits.

**CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED** and **ADJUDGED** as follows:

1. Pursuant to Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56, summary judgment is granted as to the Plaintiff's first and second claims for relief;

2. The Trustee's motions to dismiss are denied;

3. With respect to the Plaintiff's third claim for relief, and pursuant to Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56, summary judgment is granted in favor of the Plaintiff with respect to the defenses of res judicata, collateral estoppel, the Rooker-Feldman doctrine, and the Debtors' affirmative defenses;

4. With respect to the Plaintiff's third claim for relief, and pursuant to Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56(g), the following material facts are not genuinely in dispute and are to be treated as established in this adversary proceeding:

   a. The Construction Agreement is an enforceable agreement under North Carolina law;

   b. The indemnity provision in the Construction Agreement is valid and enforceable as a reciprocal attorney's fees provision pursuant to N.C.G.S. § 6-21.6; and

   c. The Plaintiff's indemnity claims may be adjudicated in this proceeding;

5. The Debtors' Rule 12 Motion is denied;

6. The court **DEFERS** ruling on the remaining issues under 11 U.S.C. § 506(b) without prejudice to the Plaintiff's ability to raise those issues in the future; and

7. The Plaintiff shall file an amended proof of claim in the base case by July 6, 2020. The Trustee

and the Debtors shall have until July 20, 2020 to file any objections to the Plaintiff's proof of

claim. The objecting party will have the burden of noticing the hearing on its objection to all

interested parties after consulting with the court and the Plaintiff as to the date and time of

the hearing.

**SO ORDERED**.

This Order has been signed                                          United States Bankruptcy Court
electronically. The Judge's
signature and Court's seal
appear at the top of the Order.