**VR KING CONSTRUCTION, LLC,**

     **Appellant.**

     **v.**

**Y2 YOGA COTSWALD, LLC,**

     **Appellee.**

**<u>APPELLANT'S BRIEF</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………......3
JURISDICTIONAL STATEMENT……………………………………4
ISSUES ON APPEAL…………………………………………………4
ISSUES ON APPEAL…………………………………………………5
ISSUES ON APPEAL………………………………………….......6
PROCEDURAL……………………………………………………......6
PROCEDURAL……………………………………………………......7
STATEMENT OF THE CASE………………………………….......7
STATEMENT OF THE CASE…………………………………………7
STATEMENT OF THE FACTS………………………………………7
STATEMENT OF THE FACTS………………………………………8
STATEMENT OF THE FACTS………………………………………9
ARGUMENT …………………………………………………….......10
ARGUMENT ……………………………………………………11
ARGUMENT ……………………………………………………12
ARGUMENT ……………………………………………………13
ARGUMENT ……………………………………………………14
ARGUMENT ……………………………………………………15
ARGUMENT ……………………………………………………16
ARGUMENT ……………………………………………………17
ARGUMENT ……………………………………………………18
ARGUMENT ……………………………………………………19
ARGUMENT ……………………………………………………20
ARGUMENT ……………………………………………………21
ARGUMENT ……………………………………………………22
ARGUMENT ……………………………………………………23
ARGUMENT ……………………………………………………24
ARGUMENT ……………………………………………………25
ARGUMENT ……………………………………………………26
ARGUMENT ……………………………………………………26
CONCLUSION ……………………………………………………27
CONCLUSION ……………………………………………………28
CONCLUSION……………………………………………………29

## <u>TABLE OF AUTHORITIES</u>

**Cases**

Travelers Cas. & Sur. Co. of Am. v. PG&E, 549 U.S. 443 (2007), …...…………………....21

New Hampshire v. Maine, 532 U.S. 742, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)…14,15,16

Summibridge Nat'l Invs. III, LLC v. Faison, 916 F3d 388 4th Cir. (2019)……....………. 23

Legacy Data Access, Inc. v. Cadrillion, LLC 889 F.3d 158 (4th Cir. 2018) ……....…...6,22,24

Matineau v. Wier 934 F.3d 385, (2019) (4th Cir. 2019)……………………………....…...15

Edwards v. Edwards, 118 N.C. App. 464 (2015)...…………………………..………........23

In re Tuscan Estates, Inc 912 F.2d 1162, 1166 (9th Cir. 1990)…………………………….13

State Farm Mut. Auto. Ins. Co. v. Atlantic Indem. Co., 122 N.C. App. 67………...…17,18

In re Medlin, 229 B.R. 353, 358 (Bankr. E.D.N.C. 1998);……………………………….25,26

Cutter v. Cutter Realty Co., 265 N.C. 664, 144 S.E.2d 882 (1965)…………………………25

*Behr v. Behr*, 46 N.C. App. 694, 698, 266 S.E.2d 393, 395-96 (1980)……………………*19,20*

*Lawing v. Jaynes, 285 N.C. 418, 206 S.E.2d 162 (1974)*…………………………………….26

Spann v. Perry 2019 U.S. Dist. Lexis 181656……………………………………………15,16

*Bockweg v. Anderson, 333 N.C. 486, 492, 428 S.E.2d 157, 161 (1993)* (citing *Smith v. Pate, 246 N.C. 63, 67, 97 S.E.2d 457, 460 (1957))*……………………………………….…...19

Edwards v. Edwards, 118 N.C. App. 464…………………………………………………20

*Thomas M. McInnis & Assoc., Inc., 318 N.C. at 428, 349 S.E.2d at 556*…………………...20


**Statutes**

28 U.S.C. § 157 ……………………………………………………………………………4,7

28 U.S.C. § 158 ……………………………………………………………………………4,7

28 U.S.C. § 1409(a.) …………………………………………………………………………4,7

28 U.S.C. § 1334(c). ……………………………………………………………5,7,10,11,12

18 U.S.C. 152………………………………………………………………………………20

N. C. Gen. Stat. § 22B-1…....………………………………………………………………5,21

N.C. Gen. Stat. § 6-21.6…………………………………………………………………16,22

11. U.S. Code § 506(b)………………………………………………………………………5

11. U.S. Code § 544………………………………………………………………………24

N.C. Gen. Stat. § 1-440.33(b)(1)……………………………………………………..…...25

N.C. Gen. Stat. § 1-116……………………………………………………………………26

N.C. Gen. Stat. § 1-117……………………………………………………………………26

N.C. Gen. Stat. § 1-118……………………………………………………………………25


**Rules**

Fed. R. Bankr. P. 7001(2) ………………………………………………………..………7

## JURISDICTIONAL STATEMENT

The Bankruptcy Court exercised its jurisdiction pursuant to 28 U.S.C. § 157(a) and (b). Section 157(a) provides that the district courts may referee bankruptcy cases and proceedings to the bankruptcy courts. Section 157(b) provides that the bankruptcy courts may hear and determine bankruptcy cases and "core proceedings," subject to review under 28 U.S.C. §158. The instant matter is a "core proceeding," pursuant to 28 U.S.C. 157.

## ISSUES ON APPPEAL

The Statement of Issues on Appeal includes the following:

### Issue I. Jurisdiction:

(a) Whether the Court erred when it did not address Plaintiff's affirmative defenses including lack of jurisdiction and/or mandatory abstention; (b) Whether the Court lacked jurisdiction to litigate attorney fees derived from state court proceedings of non-core claims when litigating state court attorney fees derived from a state court judgment is not a core proceeding as defined by the Bankruptcy Code; (c) Whether the Court erred when it retained jurisdiction even though its "Order Conditionally Granting Plaintiff's Motion for Relief from Stay" divested its jurisdiction to hear any matters related to the contract which was the basis of the state court lawsuit. Defendant alleges that Bankruptcy Court was required to and did in fact abstain from hearing any and matters related to the state court lawsuit based upon 28 U.S.C. § 1334(c)(1) when it granted Y2 Yoga relief from stay.

4

***Issue II. Affirmative Defenses***

(a) Whether the Court erred when it ruled that the Plaintiff's indemnification claim is a valid claim entitling Plaintiff to attorney fees and was not barred by res judicata, collateral estoppel and the doctrine of merger; (b) Whether the Court erred when it denied Appellant's argument under the doctrine of merger.

***Issue III. Indemnification Clause – Attorney Fees***

(a)  Whether the Court erred when it concluded that with respect to Plaintiff's third claim for relief when it allowed Plaintiff's indemnity claims for legal fees pursuant to the indemnity agreement and 11 U.S.C. §506(b); (b)Whether the Court erred in its conclusion of law that an indemnity clause applied to the facts of this case when clause contained the following language: "notwithstanding anything to the contrary contained herein, the foregoing indemnity shall apply to those third-party claims arising from General Contractor's oversight or negligence pertaining to operational. Legal or financial matters."; (c) Whether the Court erred when it found that the Indemnity clause was a reciprocal attorney fees clause that applied to attorney fees accrued in prosecution of the indemnity clause; (d) Whether the Court erred when it did not find that indemnity provision was invalid and unenforceable because the first sentence of the indemnity provision is barred under N.C. Gen. Stat. § 22B-1 (2015); (c) Whether the Court erred when it ignored the second sentence of the indemnity provision in its analysis of the legality of the indemnity provision; (d) Whether the Court erred when severed the second sentence from the first sentence in the indemnity agreement which reads as follows: "the forgoing indemnity," in direct reference to the preceding indemnity clause; (e) Whether the Court erred when it ignored a frequently cited cases for the application of N.C. Gen. Stat. § 6-21.6 is <u>Legacy Data Access, Inc. v. Cadrillion</u>, LLC, 889 F.3d 158, 162 (4th Cir. 2018) (applying North Carolina substantive law).

5

**Issue VI. Valid Attachments/Liens**

(a) Whether the Court erred when it concluded that with respect to the Plaintiffs first claim for relief (validity and perfection of Plaintiffs' attachment liens) and the second claim for relief (Plaintiff's attachment liens have priority over the Trustee's rights and are not avoidable by the Trustee); (b) Whether the Court erred when it ruled the attachments were valid and enforceable after the Jury rendered a verdict against Plaintiff for all of its fraud claims, including but not limited to fraudulent transfers, against the Defendant VR King.

## Procedural

1. Vinroy Reid (the "Individual Debtor") filed a voluntary petition for relief commencing case no. 18-31436 under Chapter 13 of the United States Bankruptcy Code on September 21, 2018.

2. V. R. King Construction, LLC ("VR King"), VR Investments, LLC ("VR Investments") and Baranko Enterprises, Inc. ("Baranko") (collectively the "Corporate Debtors") are owned by the Individual Debtor. The Corporate Debtors each filed a separate Chapter 11 petition with this court on October 31, 2018. On December 13, 2018, the court entered orders substantively consolidating the cases of the Corporate Debtors with the VR King case, case no. 18-31635, as the remaining case. The Individual Debtor and the Corporate Debtors are collectively referred to herein as the "Debtors."

3. The Trustee is the Chapter 7 Trustee for the Debtors.

4. This adversary proceeding was commenced with the filing of a complaint on August 23, 2019 (the "Complaint") under Federal Rule of Bankruptcy Procedure 7001(2). This court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157, and the April 14,

6

2014 Amended Standing Order of Reference entered by the United States District Court for the Western District of North Carolina.

5.     Venue is proper in this district by virtue of 28 U.S.C. § 1409(a), as this proceeding arises in and relates to a case under the Bankruptcy Code pending in this district.

6.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (K), and (O).

7.     An adversary proceeding was simultaneously filed in the Individual Debtor's Chapter 7 proceeding and is pending before this court as adversary proceeding no. 19-03049. The parties, the facts pled, the relief sought in each complaint, and the defenses thereto in each of the two adversary proceedings are identical.


## STATEMENT OF THE CASE

Appellee Y2 Yoga actions involves collection on a State Court Order, based on the finding of "Breach of Contract," following a trial by Jury, before State of North Carolina Superior Court, for Mecklenburg County, the Honorable Donnie Hoover presiding, on February 8, 2019. Under the Order, the Plaintiff was awarded damages in the amount of $396,649.57, with interest at the legal rate of 8% from and after the date of the breach, March 21, 2014."  Additionally, on the Plaintiff's Post-Verdict Motions which included a Motion for New Trial, Motion for Judgment Notwithstanding the Verdict on Attachment Dissolution Issues and Motion for Costs, dated November 30, 2018, Judge Hoover awarded Plaintiff costs in the amount of $23,131.98 "to be taxed jointly and severally against Reid Defendants".  This award is contained in an Order dated February 8, 2019.

7

## **STATEMENT OF THE FACTS**

The Appellee, Y2 Yoga Cotswold (hereinafter "Appellee Y2 Yoga") and Defendant, VR King Construction, LLC (hereinafter "Appellant") entered into a construction contract on August 5, 2013. At some point in time, prior to the completion of the construction project, the parties' relationship crumbled and became so contentious that they could no longer work together. Appellee Y2 Yoga filed a lawsuit against Appellant in Superior Court for the District of North Carolina for Mecklenburg County which was tried by jury during the September 18, 2018, term of Court. On November 2, 2018, the jury returned its verdict on the following claims: 1. Breach of Contract, 2. Fraud, 3. Negligent Misrepresentation, 4. Conversion, 5. Punitive Damages, 6. Unfair or Deceptive Trade Practices, 7. Fraudulent Transfer, 8. Attorney Fees and 9. Breach of Contract by Spend Management Solutions who was subsequently added as a Defendant to the lawsuit.

The Jury found in favor of the Appellee Y2 Yoga based on Claim #1, Breach of Contract only. It should be noted that Vinroy W. Reid and Appellant filed for Bankruptcy following the State Court Jury Trial between the parties but before entry of the Jury Verdict. Relief from Stay was granted by Bankruptcy Court, for the matter to be returned to State Court for completion and then forwarded to bankruptcy court for enforcement of the judgment. Final Orders based on the Jury's findings were entered on February 8, 2019. Appellee Y2 Yoga was included as a Creditor in Vinroy W. Reid's Chapter 13 proceeding bearing the case number: 18-31436 which was filed on September 21, 2018.

Appellee Y2 Yoga filed an Adversary Proceeding on August 23, 2019. In the Complaint, Appellee Y2 Yoga raised the same issues previously decided by the State Court in the litigation between the parties. Appellant filed its Answer after having been granted a 30 day extension of

8

time to file a Response to the Complaint.  In its Answer, the Appellant raised twelve (12) affirmative defenses including Collateral Estoppel and Res Judicata.

On April 14, 2020, Appellee Y2 Yoga filed a Motion for Judgment on the Pleadings, Alternate Motion for Summary Judgment.  On December 2, 2021 the Bankruptcy Court entered its Memorandum Opinion & Order. On July 21, 2021, Appellant's appealed the Bankruptcy Court's Memorandum Opinion and Order Granting in Part Plaintiff's Motion for Summary Judgment; Denying Defendant's Motion to Dismiss, Motion for Judgment on the Pleadings and Alternate Motions for Summary Judgement; deferring Ruling on Certain Issues Pertaining to 11 U.S.C.S §506(b)  and Setting Deadlines for Filing Proof of Claims and any Objection Thereto [Doc. No. 62]  entered on December 2, 2020. The Court entered an Order Denying Debtor's Motion to Reconsider on February 18, 2021 Doc. No.76]. Appellant filed an Appeal of this Order on March 4, 2021. However, Appellant believed the Appeal in DOCKET NO. 3:21-cv-00094-MOC was interlocutory. Appellant asserts that on July 7, 2021, Chief Bankruptcy Judge Beyer entered an Order Overruling Objections to Claim in Case No. 18-31635 and Case No. 18-31436 all outstanding litigation matters have been resolved and this Order is now a final appealable order.

## ARGUMENT

**ISSUE ONE:**

### *JURISDICTION*

Whether the Court erred when it did not abstain based upon mandatory and/or permissive abstention and retained jurisdiction, allowed the litigation of non-core state court legal issues related to the contract that was the basis of the state court litigation including, but not limited to, attorney fees and indemnification, contrary to its Order dated October 31, 2018, in the case entitled *In re Vinroy Reid* W.D.N.C Case No. 18-31436, Docket No. 48 (Chapter 13 converted to Chapter

7) Conditionally Granting Plaintiff's Motion for Relief from Stay and in the case entitled *In re V.R. King Construction, LLC*, W.D.N.C., Stipulation Conditionally Granting Relief From Stay dated November 1, 2018, Docket No. 5.

Appellant asserts that the Order and Stipulation granting relief from stay divested jurisdiction from the Bankruptcy Court, to hear all non core matters related to the contract, including breach of contract, fraud, fraudulent transfers, alter ego, piercing the corporate veil, conversion, unfair and deceptive trade practices, breach of fiduciary duties, attorney fees and indemnity claims, all which were the basis of the state court complaint and subsequent judgment. Appellant alleges that pursuant to the Bankruptcy Court's Order and Stipulation granting relief from stay, the Court was required to abstain from hearing any and all matters related to the state court non core matters alleged in the state court complaint filed in the state court lawsuit based upon 28 U.S.C. § 1334(c)(1) when it granted Appellee Y2 Yoga Cotswold, LLC relief from stay. The Court subsequently, violated its own Order granting relief from stay when it decided to hear the issues that were pled in the state court lawsuit again in bankruptcy court adding an additional three years in litigation and cost.

Appellants argue that the Bankruptcy Court erred when it allowed for the litigation of the state court non-core matters alleged in the complaint (attorney fees and indemnity clause) to be relitigated in Bankruptcy Court providing Appellee Y2 Yoga Cotswold with an additional bite at the apple and an unfair advantage for over Appellant.

## DISCUSSION AND APPLICABLE LAW

Appellant alleges that on September 27, 2018, Appellee Y2 Yoga Cotswold, LLC (hereinafter, "Appellee Y2 Yoga ") filed an "Emergency Motion for Relief from Stay For an Order Allowing Creditor Y2 Yoga Cotswold, LLC to Proceed with State Court Litigation:

Motion for Mandatory Or Permissive Abstention" [Doc. #6] in Defendant Vinroy Reid's Chapter 13 Bankruptcy proceeding, Case No. 18-31436. Based upon the Order granting the Motion for Relief From Stay in Case. No. 18-31436, Appellant and Appellee Y2 Yoga, in Case No. 18-31635, entered into a stipulation Granting Conditional Relief From Stay.

Appellant contends that based upon the Bankruptcy Court's "Order Conditionally Granting Appellee y2 Yoga's Motion for Relief from Stay" (hereinafter MFRS ) the Bankruptcy Court lacked subject matter jurisdiction to hear any matters related to the contract which was the basis of the state court lawsuit. Appellant alleges that Bankruptcy Court was required to abstain from hearing any matters related to the state court lawsuit based upon 28 U.S.C. § 1334(c)(1) and/or (c)(2) and any and all orders related to non core state court issues are null and void, Void Ab Initio.

Pursuant to 28 U.S.C. § 1334(c)(1) or (c)(2), Appellee Y2 Yoga asserted the following in its MFRS:(1) Plaintiff's motion was timely; (2) the State Court action could not have been commenced in Federal Court; (3) the issues were noncore; (4) Bankruptcy Court would not have had jurisdiction but-for the pending bankruptcy; (5) the State Court jury trial had begun prior to the filing of the bankruptcy; and (6) the action would have been timely adjudicated in state court as the state court trial lasted eight weeks. As a result of satisfying all the prongs of 28 U.S.C. § 1334(c)(1) or (c)(2), Bankruptcy Court was statutorily required to abstain.

On October 31, 2018, Bankruptcy Court issued an order conditionally granting relief from stay in Chapter 13 Bankruptcy Case No. 18-31436 [Doc. #48]. In its "Order Conditionally Granting Relief From Stay the Court made several findings of fact which were incorporated into the Stipulation Granting Relief From Stay, germane to Appellant's appeal: (1) Y2's claim for relief in the state court litigation includes (but are not limited to) non-core breach of contract, fraud, fraudulent transfers, alter ego, piercing the corporate veil, conversion, unfair and deceptive

trade practice and breach of fiduciary duty and (2) Y2 sought in its Motion For an Emergency Order provisions **allowing Superior Court Judge Hoover to proceed with the jury trial as to all parties, including the Debtor, and to enter a final judgment as to all parties with respect to all issues in the complaint** (emphasis added).

Appellant asserts the Bankruptcy Court reached several conclusions of law in its Order granting relief from stay, which was incorporated into the Stipulation, that are relevant to its Appeal: (1) the Complaint clearly concerns issues of state law and the expertise of this Court is not necessary; (2) modifying the stay will promote judicial economy; and (3) this Court can properly protect the Bankruptcy Estate by requiring that the enforcement of any judgment in favor of Y2 will be solely within the jurisdiction of Bankruptcy Court (emphasis added).

Even more significant to Appellant's Appeal is the fact that based upon this Court's findings of fact and conclusions of law this court held the following: (1) Y2's Motion for Relief should be and is hereby granted for the purpose of allowing Y2 to determine its claims, if any, in the state court litigation and (2) to the extent that Movant obtains a judgment against the Debtor or any other Defendants, Movant is required to seek enforcement of such judgment through this court (emphasis added).

As such, the Bankruptcy Court's October 30, 2018, Order granting conditional relief from stay, and the November 1, 2018, Stipulation Conditionally Granting Relief From Stay in Chapter 11 Bankruptcy Case No.18-31635 [doc. #5] which incorporated the terms of the Order Conditionally Granting Relief from Stay, **specifically limited this Court's jurisdiction to enforcement of the State Court Judgment** (emphasis added).

Appellee Y2 Yoga cited the twelve factors for lifting stay as enumerated by the Ninth Circuit in *In re Tuscan Estates*, Inc 912 F.2d 1162, 1166 (9th Cir. 1990) as they related to the State Court trial. Appellee's alleged that the third, fourth, fifth, sixth, eighth, and ninth factors

do not apply to the facts of this case but the remaining factors weighed heavily in favor of the court granting relief from stay. It should be noted that Appellee argued under the first factor, that "allowing the Movant to proceed in the State Court litigation will likely result in complete resolution of the issues as relates to Plaintiff's claim and status as a creditor." Plaintiff argued that under the second factor, "it does not appear that the state court litigation would interfere or prolong the Debtor's Chapter 13 bankruptcy case." However, Appellee Y2 (Movant) stated that it intended to seek a determination whether the bankruptcy should be dismissed.

Appellee argued that the seventh factor is also favorable to lifting the stay because doing so would not prejudice the interest of other creditors or interested parties. Appellee alleged under the tenth and eleventh factors, "the State Court litigation is substantially underway." Under the twelfth factor, the "balance of hurt" weighs in favor of lifting the stay for the Movant as lifting the stay does little harm to the Appellant as he is prepared for trial and represented by counsel. Appellee argued that based upon the above factors it had shown sufficient cause for relief from stay. The Bankruptcy Court granted Appellant's relief from stay for the **sole purpose of enforcing the judgment** (emphasis added). As such any orders issued by the bankruptcy regarding the state court contract issues litigated in state court are *Void Ab Initio*


**ISSUE TWO:**

***RES JUDICATA, COLLATERAL ESTOPPEL AND THE DOCTRINE OF MERGER***

Appellant asserts that Appellee Y2 Yoga was judicially estopped from alleging that it is entitled to attorney fees pursuant to the indemnity clause contained in the contract that Appellee implies is a reciprocal attorney fees provision. Appellant further contends that Appellee Y2 in its Motion for Relief From Stay sought Emergency Orders from this Court allowing Judge Hoover to proceed with the state court jury trial, to issue a judgment as to all issues. Appellee Y2 in its

motion for relief from stay specifically requested relief from stay to "PROCEED WITH THE STATE COURT JURY TRIAL TO ISSUE A JUDGMENT AS TO ALL ISSUES." Appellee Y2 Yoga in the conclusion of its motion for relief from stay pled the following " For the foregoing reason, the Movant respectfully requests entry of an order granting this Motion, providing Movant relief from stay to pursue all claims in the state court litigation, including alter ego and veil piercing, or alternatively abstaining from such litigation, and for such other and further relief as may be just and proper."

In *New Hampshire v. Maine, 532 U.S. 742, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)*, the Supreme Court set forth a three-part test for when judicial estoppel should be applied. The Supreme Court stated that judicial estoppel should be applied if the following factors are present: (1) The parties later position must clearly be inconsistent with the parties earlier position; (2) the court was persuaded to accept the parties earlier position such that judicial acceptance of the inconsistent position in the later proceeding leads to the perception that one of the courts was misled; and (3) the party seeking to assert the inconsistent position would enjoy an unfair advantage over the opposing party if not estopped. *Id.* at 749-750.

The Fourth Circuit recently in *Matineau v. Wier 934 F.3d 385, 2019 WL 3772151, (4th Cir. 2019)* described the doctrine of judicial estoppel as follows:

> As the Supreme Court has explained, judicial estoppel is an equitable doctrine, designed to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment. *New Hampshire v. Maine, 532 U.S. 742, 749-50, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)* (internal quotation marks omitted).

The Fourth Circuit ruling in *Matineau* stated: "typically, judicial estoppel is reserved for cases where the party to be estopped has taken a later position that is clearly inconsistent with her earlier one; has persuaded a court to adopt the earlier position, creating a perception that either the first or the second court was misled; and would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. "

14

Finally, there is the longstanding principle that judicial estoppel applies only when the party who is alleged to be estopped intentionally misled the court to gain unfair advantage, and not when a party's prior position was based on inadvertence or mistake. In the current case, the Appellant is not asserting that the Appellee intentionally misled the Bankruptcy Court or the state court when it informed both courts that it was only going to state court to secure a judgment for all of its claims in its complaint and that upon securing a judgment it would go back to bankruptcy court for the sole purpose of enforcing the judgment. In *Spann v. Perry, 2019 U.S. Dist. LEXIS 181656,* the District Court in the Western District of North Carolina found that when a party argues in one proceeding that the statute of limitation is tolled a party cannot then argue in another proceeding that the statute limitation is not tolled. Id at 12.

Appellee Y2 Yoga, like in Spann v. Perry, nformed the state court that it was pursuing resolution of all matters in its complaint. At the conclusion of the case based upon Appellee y2 Yoga's pleadings, the state court used the following language in its judgment: "IT IS FURTHER ORDERED, that Plaintiff Y2 Yoga's costs of this action are taxed to the Reid Defendants based on this judgment upon separate application by Plaintiff Y2 Yoga. This judgment represents a complete and final disposition of all claims and issues in this action".

The *Matineau* case stated that "judicial estoppel is an equitable doctrine, designed to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."

Appellant Y2 was aware that the provisions of N.C.G.S 6-21.6, under which Appellee contemplated seeking attorney fees, required Judge Hoover to make findings of fact and conclusions of a law in his order awarding attorney fees based upon the thirteen enumerated factors in the statute.

Appellant contends that Appellee Y2Yoga should be judicially estoppel from collecting

fees because the facts of this case fit the three enumerated factors espoused by the Supreme Court in *In New Hampshire v. Maine*: *New Hampshire v. Maine*: (1) Plaintiff's position that it is entitled to have the bankruptcy court determine whether it is entitled to attorney fees pursuant to the contract is inconsistent with its earlier position that the state court is the proper venue to hear any and all issues related to the contract; (2) Both courts were persuaded to accept the Plaintiff's earlier position such that judicial acceptance of the inconsistent position in the later bankruptcy proceeding leads to the perception that one of the courts was misled as neither court was put on notice during the hearing on the MFRS nor at any time prior to Appellee filing a complaint in Bankruptcy Court, that Appellee would be seeking a determination of entitlement to attorney fees in the Bankruptcy Court; and (3) the Appellee is seeking to assert that the Bankruptcy Court can determine whether it is entitled to attorney fees as alleged in its complaint which is inconsistent with its earlier position that the state court would be the proper venue to determine all issues related to the complaint. Moreover, Appellee pled in its pleadings that it would only seek enforcement of the judgment in the Bankruptcy Court. Appellant avers that Appellee's inconsistent positions would allow Appellee to enjoy an unfair advantage over the Appellant if not estopped. Based upon the foregoing, Appellant requests that this Court find that the Bankruptcy Court erred when it failed to find the Appellee was estopped from pursing attorney fees derived from its state court judgment.

## EQUITABLE ESTOPPEL
## DISCUSSION AND THE LAW

The Appellant asserts that the Appelle's third cause of action should be dismissed based upon the Doctrine of Equitable Estoppel. The North Carolina Court of Appeals in *State Farm Mut. Auto. Ins. Co. v. Atlantic Indem. Co.,* 122 N.C. App. 67, stated that a party invoking the doctrine of equitable estoppel has the burden of proving the following elements: (1) the conduct

16

to be estopped must amount to false representation or concealment of material fact or at least which is reasonably calculated to convey the impression that the facts are other than and inconsistent with those which the party afterwards attempted to assert; (2) Intention or expectation on the party being estopped that such conduct shall be acted upon by the other party or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; (3) Knowledge, actual or constructive, of the real facts by the party being estopped; (4) Lack of knowledge of the truth as to the facts in question by the party claiming estoppel; (5) Reliance on the part of the party claiming estoppel upon the conduct of the party being sought to be estopped; (6) Action based thereon of such a character as to change his position prejudicially. *Id.* At 574-75

Appellant contends that based upon the factors enumerated in *State Farm Mut. Auto. Ins. Co. v. Atlantic Indem. Co.,* it has proven the elements of equitable estoppel and asserts the following: (1) the Appellee's conduct amounts to false representation or concealment of material fact which is reasonably calculated to convey the impression that the facts are other than and inconsistent with those which the Plaintiff is attempting to assert in Bankruptcy Court; (2) Appellee argued in Bankruptcy Court that the State Court was the best venue to conduct a trial on all of the issues alleged in its complaint including attorney fees and as such Appellant, the Bankruptcy Court and the State Court relied on Appellee's assertions; (3) After the state court trial Appellant became aware that its attorney fees would be severely limited by its failure to prevail on seven (7) of its eight (8) causes of action thereby substantially impairing its rights to collect attorney fees; (4) Appellant contends it relied on Appellee's assertions that it would seek a judgment on all of its claims made in its complaint filed in State Court and that after it receiving its judgment in State Court that Appellee would return to Bankruptcy Court for the sole purpose of enforcement of the State Court judgment. Appellant was not aware that Appellee

would change its position as conveyed in its MFRS and Stipulation Conditionally Granting the Motion For Relief From Stay and request the Bankruptcy Court determine the amount of attorney fees it should be awarded based upon its successful breach of contract claim; (5) Appellant t relied upon Plaintiff's claim that it would only seek a judgment of all of the issues in its complaint in state court and then seek enforcement of the judgment in Bankruptcy; (6) As a result of relying on Appellee's claim that is would only seek a judgment of all issues in its complaint in state court, Appellant did not appeal any of the State Court orders nor did Appellant appeal the Bankruptcy Court's Order granting the motion for relief from stay and the Stipulation. . Finally, Appellant avers that Appellee's inconsistent positions would allow Appellee to enjoy an unfair advantage over the Appellant if not estopped. Appellant believes that based upon the Order granting the motion form relief from stay and the Stipulation incorporating the same, Appellant relied on the Bankruptcy Court's Order and Stipulation to its detriment providing the Appellee an unfair litigation advantage costing Appellant excess of a half a million dollars.

## DOCTRINE OF MERGER
## DISCUSSION AND THE LAW

Appellant contends that it should be noted for the record that Appellee Y2 Yoga argued the incorporation of the entire contract into the breach of contract claim in all of their state court pleadings, their state court discovery, and again at trial. Appellee Y2 Yoga also recovered prejudgment interest on the breach of contract claim. Thus the record shows that the claim Appellee Y2 Yoga is alleging here in Bankruptcy Court, was definitely tried at the state trial court level as evidenced by the fact that it was Plaintiff's only means of recovery. The Court of Appeals further stated, "More specifically, defendant relies on the principle of ***merger***, 'a collateral aspect of *res judicata* which determines the scope of claims precluded from relitigating by an existing *judgment'." Behr v. Behr*, 46 N.C. App. 694, 698, 266 S.E.2d 393, 395-96 (1980) (citations omitted). When a plaintiff recovers a valid and final judgment, his or her original claim

18

is extinguished and the rights granted pursuant to the judgment are substituted for it, and plaintiff's original claim is thus said to have "merged" with the judgment. *Id.* at 470. *Restatement (Second) of Judgments § 18, Comment a* (1982). Defendants states

The Edwards Court continued by stating ***Merger*** requires all damages resulting from a single wrong or cause of action to be recovered in one suit. *Bockweg v. Anderson, 333 N.C. 486, 492, 428 S.E.2d 157, 161 (1993)* (citing *Smith v. Pate, 246 N.C. 63, 67, 97 S.E.2d 457, 460 (1957))*. The Defendant contends that the law is clear as it relates to the Merger. Defendant avers that upon Plaintiff being awarded its judgment and post judgment interest for the sole claim of breach of contract all of its claims it brought or should have brought were merged into its judgment. The Edwards court stated otherwise, "a party suing for the breach of an indivisible contract must sue for all of the benefits which have accrued at the time of suit or be precluded from maintaining a subsequent action for installments omitted." *Behr, 46 N.C. App. at 698, 266 S.E.2d at 396* (citing *Restatement of Judgments § 62, Comment h* (1942)).

The Edward's Court goes on to opine that "Defendant is correct that as a result of the doctrine of ***merger***, "all matters, either fact or law, that were or should have been adjudicated in the prior action are deemed concluded." *Thomas M. McInnis & Assoc., Inc., 318 N.C. at 428, 349 S.E.2d at 556* (citations omitted). It is uncontroverted that plaintiff's claim for indemnification was not adjudicated in his specific performance lawsuit. The question remains whether the claim was one which "should have been adjudicated" therein. The Edwards court concluded "thus appears plaintiff's claim for indemnification had not accrued at the time of filing his complaint for specific performance in that neither had breach of the Agreement been determined nor had he incurred counsel fees. Defendant avers that the case at bar is different then the Edwards case because in this case Plaintiff clearly recieved a judgment for breach of contract at the end of trial

and said Judgment was due and owing unlike the Edwards case where a breach of the agreement had not been adjudicated and no judgment was awarded.

***Issue III. Indemnification Clause – Attorney Fees***

Appellant asserts that there is no valid enforceable indemnification provision in the Construction Agreement and believes that the construction agreement in this case is more consistent with the North Carolina Court of Appeals case <u>Edwards v. Edwards, 118 N.C. App. 464.</u> In that case the Court of Appeal observed that indemnity generally relates to liability for derivative fault (i.e. an obligation to a third party). Appellant believes that <u>Edwards</u> stand for the proposition that indemnity relates to liability for derivative claims than the more narrow holding that *res judicata* did not prohibit the motion for attorneys' fees following a specific performance determination. <u>See</u> <u>Edwards</u>, 118 N.C. App. at 467, 456 S.E.2d at 128 (citations omitted). Here, the "Y2 Yoga Expansion Construction Agreement," dated August 5, 2013, is governed by North Carolina law. <u>See</u> Section 6(c).

Section 3(b) states "<u>Indemnities</u>. The parties hereto agree to indemnify and hold harmless the nonbreaching party against any claims, damages or penalties (including court costs and outside legal fees reasonable incurred) arising out of the breaching party's breach **or alleged breach of any agreement**, representation and warranty in this agreement. Notwithstanding anything to the contrary contained herein, the forgoing indemnity shall apply to those third-party claims arising from General Contractor's oversight or negligence pertaining to operational, legal and/or financial matters." (emphasis added). Appellant asserts that the first sentence of the indemnity provision, if read literally, is problematic for Appellee Y2 Yoga. The provision specifically includes the "alleged breach of any agreement . . . in this agreement." Thus, if the contract and this Section is enforceable, then Appellee's argument concerning the need to wait until indemnity accrues by way of the determination of a "breaching party" is not correct. The "alleged breach" triggered this

provision back in 2014. Read literally, Appellant failed to raise this issue at the trial court with Judge Hoover even though Appellee knew it had alleged a breach in 2014, and Appellee Y2 Yoga incorporated this contract into all of its pleadings from 2014. Appellant believes the indemnity provision is invalid and unenforceable because the first sentence of the indemnity provision is barred under N.C. Gen. Stat. § 22B-1 (2015). Under this statute, a party is not entitled to indemnity for its own fault in part or in whole. If the indemnity provision is taken on its face, the first sentence purports to hold either party harmless for "any alleged breach," which necessarily includes alleged breaches of contract asserted by the Appellant against Plaintiff in 2014. As drafted, this provision is overly broad and purports to hold both parties harmless for "any alleged breach." As drafted, the agreement is void on its face. In either event, the "alleged breach" requirement in the indemnity provision either makes the provision void on its face and/or it triggered Appellee alleged indemnity and hold harmless claim back in 2014 without the need for a judgment to determine "breach of contract" in 2018. In addition, Appellant believes that the Court erred when it ignored the second sentence of the indemnity provision in its analysis of the legality of the indemnity provision. The second sentence clearly explains how an indemnity agreement is intended to operate within the context of a construction project concerning derivative liability. The sentence reads, "Notwithstanding anything to the contrary contained herein, **the forgoing indemnity shall apply to those third party claims** arising from General Contractor's oversight or negligence pertaining to operational, legal and/or financial matters." (emphasis added).

Appellant contends the second sentence is not severable from the first sentence because it specifically states, "the forgoing indemnity," in direct reference to the preceding indemnity clause. But, even if there is an argument that it could be severable, or a court decides to "blue-pencil" the paragraph to save the preceding provision, the second sentence demonstrates the intent of the parties and, the intent is consistent with derivative liability in the context of the construction

industry. Appellant believes that a frequently cited cases for the application of N.C. Gen. Stat. § 6-21.6 is <u>Legacy Data Access, Inc. v. Cadrillion</u>, LLC, 889 F.3d 158, 162 (4th Cir. 2018) (applying North Carolina substantive law). In <u>Legacy</u>, attorneys' fees were already determined once in the trial court below prior to the 4th Circuit remanding, in part, for a determination of contract damages in a new trial, and for the court's reassessment of the proper amount of fees. Specifically, the fees could change dramatically because of the requirement under § 6-21.6 for an assessment of the results obtained and to the extent to which the prevailing party succeeded compared to other factors under the statute. Notably, this assessment does not add statutory costs or prejudgment interest to the amount in controversy to be determined under N.C. Gen. Stat. § 6-21.6. Instead, the emphasis of the analysis is on the principal damage determinations. Appellant is not aware of published caselaw which applies N.C. Gen. Stat. § 6-21.6 after post-verdict motions in a completely different forum than the trial court. After a search based on annotations and the frequency of citations to <u>Legacy</u>, it does not appear that there is a published case on all-fours with Appellee Y2 Yoga's attempt to present this attorneys' fee issue to this Court—particularly after Appellee Y2 Yoga already presented post-trial, post-verdict motions to Judge Hoover. Appellee has not presented such a case to the Bankruptcy Court in its motions or briefs. Appellant asserts that first, the Creditor such as the Appellee Y2 Yoga must have an award for attorney fees in state court as part of a judgment before it could pursue a claim for indemnification for attorney fees as allowed by a valid indemnification provision. In this case, since the case was adjudicated on its merits by way of a state court jury trial where the jury awarded damages, and the Appellee participated in a hearing sought cost and was awarded cost, the trial judge and only the trial Judge who presided over the trial and the hearing for cost would have been in the best position to award attorney fees after a hearing based upon the what occurred at trial. In this case Plaintiff never received an award for attorney fees as part of its Judgment. Additionally, Appellee's alleged a claim from their initial

22

lawsuit in which they took a voluntary dismissal, for attorney fees in excess of $50,000.00 which was not awarded in state court. Appellant asserts that in order for Appellee Y2 Yoga's claim to be allowed by Bankruptcy Court, it must be an allowable claim pursuant to state law. There was no "reciprocal attorney's fees" clause contained in the contract between Appellee Y2 Yoga and Appellant as the contract only contained an indemnity clause. The indemnity clause did not use the normal language requesting reasonable attorney fees as used in most indemnity agreements, Appellee Y2 Yoga's indemnity clause stated that breaching party would be liable for "cost and outside legal fees" however contract did not provide a definition of outside attorney fees. Therefore, Appellant contends that an examination of the intent of the parties by State Court was necessary to determine whether as the Appellee Y2 Yoga is now claiming, the "indemnity clause" should be interpreted as a "reciprocal attorney's fees clause". In order to determine the intent of the parties, the finder of fact, in the State Court proceeding, the jury, would have had to review the contract and hear testimony because Plaintiff's assertion that the indemnity clause is a reciprocal attorney fees agreement implies that the indemnity clause is ambiguous, the "indemnity clause is not clear on its face. Basic contract law states that when a contract provision is ambiguous, the Court must look at the ambiguity in the light most favorable to the non-drafting party which in this case, was the Appellant. In examining the provision in the light most favorable to the Appellant, the state Court would have found that because there was no specific attorney fees provision in the contract let alone a specific "reciprocal attorney's fees" provision, there was no intent of the Appellant to be bound by the indemnity clause for the purpose of the Appellee Y2 eing granted attorney's fees. Pursuant to the provisions of N.C.G.S. Section 6-21.6, there should have been a specific, stand alone, attorneys fees provision drafted into the contract which recited with specificity the purpose of the provision and the terms to be used to calculate these fees. Appellee had every opportunity to include such a provision in the contract since it was the drafting party; it

23

failed to do so. Accordingly, Appellee should not have been allowed to utilize the Bankruptcy Court to enforce an ambiguous indemnity provision which read as follows: "the parties hereto agree to indemnify and hold harmless the non-breaching party against any claims, damages or penalties (including outside legal reasonably incurred) arising out of the breaching party's breach or alleged breach of any agreement, representation and warranty of this agreement." Appellant believes the Court erred when it found that the collection of attorney fees in bankruptcy court, after the state court judgment was entered in state court, where attorney fees were pled in the state court complaint but never pursued, arose out of the breaching parties breach of the agreement. Additionally Appellant believes the Court erred when it failed to take into account the affidavit of Attorney Christopher Campbell. Appellant's state court legal counsel for who litigated the matter against Appellee's state court Counsel David Guidry.

### Issue VI. Valid Attachments/Liens

Appellant contends that Appellee Y2 Yoga did not properly perfect it's Attachment Liens from the Trustee's section 544(a) strong arm powers," by filing a *lis pendens* as required by State Law. Under North Carolina law, a *lis pendens* pre- serves the priority of a lien that arises after an order of attachment has been perfected by judgment and levy. *In re Medlin,* 229 B.R. 353, 358 (Bankr. E.D.N.C. 1998); see also N.C. Gen. Stat. § 1-118 (stating that a purchaser or encumbrancer receives constructive notice by a cross indexing of a *lis pendens*). Therefore, Defendant alleges that as a subsequent bona fide purchaser or hypothetical lien creditor it will take the property subject to a properly recorded notice of *lis pen- dens*. Id (holding that a *lis pendens* filed eleven months before the debtor filed for bankruptcy entitled the creditor to priority as against subsequent lienors or bona fide purchasers); cf. *Cutter v. Cutter Realty Co.,* 265 N.C. 664, 144 S.E.2d 882 (1965). In the present case the Appellee Y 2 Yoga has not provided documentation evidencing that it has provided notice to the Appellant by a cross-

indexing of a *lis pendens*. As a result, Appellee Y2 Yoga's pre-petition attachment liens have not been perfected as it relates to this Bankruptcy proceeding and its post-petition judgment is void ab initio. Appellant believes that Appellee Y2 Yoga's post-petition judgment is a preference, and since Appellee Y2 Yoga did not file a *lis pendens* it failed to perfect its liens.. Appellant further believes that the Court in *Medlin* explained it best when it opined, "the ad- vantage of *lis pendens,* however, is that it fixes the priority of the lien that arises when the order of attachment is subsequently perfected by judgment and levy. "The date to which the lien relates back . . . , with respect to real property, is the time at which the notice of the order of attachment is docketed in the record of *lis pendens* in the Country where the property is located." Id.; see also N.C. Gen. Stat. § 1-440.33(b)(1). Thus, a subsequent bonafide purchaser or lien creditor takes the property subject to a properly recorded notice of *lis pendens. Cf.* Cutter v. Cutter Realty Co*.,* 265 N.C. 664, 144 S.E.2d 882 (1965). Additionally, Appellant contends that the Order must be set aside because Appellee Y2 Yoga's the attachments were not valid and enforceable after the Jury rendered a verdict against Appellee Y2 Yoga for all of its fraud claims, including but not limited to fraudulent transfers, against the Appellant. Appellant contends that the Courts conclusions with respect to the Appellee Y2 Yoga's first claim for relief (validity and perfection of Appellee Y2 Yoga's attachment liens) and the second claim for relief (Appellee Y2 Yoga's attachment liens have priority over the Trustee's rights and are not avoidable by the Trustee) were incorrect rulings as Appellant relies upon the requirement in *In re Medlin* that a lien is properly perfected and relates back to the lis pendens when no Judgment has been entered prior to the filing of the bankruptcy. In the present case Appellee Y2 Yoga has not provided documentation evidencing that it has provided notice to the Defendants by a cross-indexing of a *lis pendens*. As a result, Appellee Y2 Yoga's pre-petition attachment liens have not been perfected as it relates to this bankruptcy proceeding and its post-petition judgment is void ab

initio. Appellant believes that Appellee Y2 Yoga's post-petition judgment is a preference, and since Appellant did not file a *lis pendens* it failed to perfect its liens.

As such, the Appellant contends that although the Appellee Y2 Yoga's attachment liens were docketed in the Mecklenburg Civil Case Processing System said liens were not properly perfected as to the Debtor and or the Trustee. Appellant avers that pursuant to North Carolina Lis Pendens law N.C.G.S 1-116 and 1-117.

Appellant believes the North Carolina Court of appeals explained it best when it held that "The *lis pendens* statutes enable a purchaser for a valuable consideration who has no actual notice of the pendency of litigation affecting the title to the land to proceed with assurance when the *lis pendens* docket does not disclose a cross-indexed notice disclosing the pendency of such an action". *Lawing v. Jaynes, 285 N.C. 418, 206 S.E.2d 162 (1974)*. Appellant contends that Appellee Y2 Yoga's attachments were not perfected and were dissolved upon the jury returning a verdict against Appellee Y2 Yoga as to all its allegations against Appellant for fraud. Appellant avers that since Appellee Y2 Yoga's attachment was based upon the fraud claims that upon the jury ruling against Appellee Y2 Yoga on the fraud claim the basis for the attachment was no longer viable and said fraud claims were void as a matter of law. Appellant believes that the Court improperly ruled that Appellee Y2 Yoga had valid legal fees pursuant to 11 U.S.C. 506(b) without determining whether Appellee Y2 Yoga's claims were over secured as required by the statute.

## CONCLUSION

In Conclusion, Appellant asserts that based upon the aforementioned facts, the Bankruptcy Court erred in section B, D and C of its Memorandum Opinion and Order when it ruled as a matter of law as to the following (a) Appellee Y2 Yoga had valid liens based upon

26

North Carolina Attachment law; (b) when it concluded as a matter of law that Appellee Y2 Yoga's liens had priority over the Trustee; (c) when it concluded as a matter of law that Appellee Y2 Yoga's indemnity claims for legal fees were approved pursuant to agreement and 11 USC 506(b); (d) when it ruled the indemnity clause was an valid and enforceable agreement between Appellant and Appellee Y2 Yoga; (e) When it ruled that the Judgment is not res judicata as to Appellee Y2 Yoga's indemnity claims; (f) when it ruled that the ruled that there was no final judgment on the merits of Appellee Y2 Yoga's indemnification claims in the state court litigation; (g) there was no identity of the causes of action between the state court litigation and Appellee's Adversary Proceeding in bankruptcy court; (h) when it ruled the doctrine of merger does not bar Appellee Y2 Yoga's indemnity claims; (i) Appellee Y2 Yoga was not collaterally estopped from pursing its indemnification claims; (j) Appellee Y2 Yoga's indemnification rights against the Appellant are not the same as the issues in the state court lawsuit; (k) Appellee Y2 Yoga was entitled to reasonable attorney fees as the holder of a non-consensual lien although Rashton v. State Bank (In re Glenhill) 164 F.3d 1338, 1334 (10th Cir 1999) holds the opposite.

This the 27th day of September, 2021

/s/Robert Lewis
ROBERT LEWIS, JR.
THE LEWIS LAW FIRM, P.A.
PO BOX 1446
Raleigh, NC 27602
Telephone:(919) 987-2240
Facsimile: 919-573-9161
rlewis@thelewislawfirm.com
N.C. State Bar no: 35806

27

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:21-CV-00364-MOC**

VR KING CONSTRUCTION, LLC,

Appellant.

v.

**Y2 YOGA COTSWALD, LLC,**

    **Appellee.**

## CERTIFICATE OF SERVICE

I hereby certify that I this day have served a copy of the Debtor's

## APPELLANT'S BRIEF

To all the other parties listed below electronically via CM/ECF, e-mail or by depositing a copy thereof in an envelope bearing sufficient postage in the United States mail, as indicated below, this 27th day of September, 2021.

Shelley K. Abel
Bankruptcy Administrator  (via ECF)
402 West Trade Street
Suite 200
Charlotte, NC 27601
Tel: 704-3507590
Fax: 704-344-6666

James H. Henderson (via ECF)
1120 Greenwood Cliff
Charlotte NC 28202-2826
Tel: 704-333-3444
Fax: 704-333-5003

A.  Burton Shuford (via ECF)
4700 Lebanon Road, Suite A-2
Mint Hill, NC 28227
Tel:  (980) 321-7005
Fax: (704) 943-1152

Vinroy W. Reid  (via U.S. Mail)
P.O. Box 5035
Charlotte, North Carolina 28229

                             /s/Robert Lewis
                             ROBERT LEWIS, JR.
                             THE LEWIS LAW FIRM, P.A.
                             PO BOX 1446
                             Raleigh, NC 27601
                             Telephone: (919) 987-2240

29

Facsimile: 919-573-9161
rlewis@thelewislawfirm.com
N.C. State Bar no: 35806